**P.V.F., INC., Appellant,**

v.

**PRO METALS, INC., Appellee.**

No. 14–00–01225–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 25, 2001.

---

Patrick J. Dyer, Houston, for appellants.

Josh M. Harrison, Woodlands, for appellees.

Panel consists of Justices ANDERSON, EDELMAN, and FROST.

## MAJORITY OPINION ON MOTION FOR REHEARING

RICHARD H. EDELMAN, Justice.

P.V.F., Inc.'s ("PVF") motion for rehearing is overruled, the opinions issued in this case on August 23, 2001 are withdrawn, and the following majority and dissenting opinions are issued in their place.

In this interlocutory appeal,[1] PVF challenges the denial of its special appearance on the grounds that it does not have suffi-

---

1. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon Supp.2001) (permit-
ting interlocutory appeal of an order granting or denying a special appearance).

cient contacts with the State of Texas to establish specific or general jurisdiction over it. We affirm.

## Background

PVF is a Delaware corporation with its principal place of business in Delaware, and Pro Metals, Inc. ("Pro Metals") conducts its business in Texas. At various times from November of 1998 to December of 1999, PVF orally purchased goods from Pro Metals on credit. After PVF allegedly failed to pay Pro Metals for goods purchased in two of these transactions, Pro Metals brought suit in Texas for payment. PVF filed a special appearance, which the trial court denied.

The trial court's findings of fact state that: (1) since October of 1998, PVF placed thirty separate purchase orders to Pro Metals at its offices in Texas; (2) the orders consisted of pipe and pipe fittings, including components manufactured in Texas; (3) the goods were taken from Pro Metals's Texas inventory; (4) the goods were shipped "F.O.B." Houston;[2] (5) PVF remitted payment (on the orders not in question) to Pro Metals's offices in Texas; and (6) although the evidence is disputed as to which party initiated the original contact with the other, the evidence ·is undisputed that PVF knew it was purchasing goods from Texas. The trial court's

conclusions of law state that: (1) minimum contacts may be satisfied by isolated and occasional contacts with Texas if the cause of action arises from or relates to those contacts; (2) Pro Metals's claim arose from and related to PVF's contacts with Texas; and (3) the ongoing and continuous nature of PVF's purchases in Texas make them more than random or fortuitous and therefore the exercise of jurisdiction by the State of Texas does not violate the requirements of due process. PVF does not challenge the trial court's findings of fact, but only the application of law to them to conclude that a Texas court could exercise personal jurisdiction over it.

## Standard of Review

■ We are aware of no case in which the Texas Supreme Court has specified whether the appropriate standard for reviewing a decision on personal jurisdiction is abuse of discretion, sufficiency of the evidence, *de novo* review, a combination of these, or otherwise. However, appeals courts have generally reviewed trial courts' challenged findings of fact on the existence or lack of personal jurisdiction for sufficiency of the evidence, and their conclusions of law on that issue, *de novo.*[3] Conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence.[4]

---

2. "F.O.B." at the place of sale means the purchaser will pay the freight and assume the risk of loss during shipment. TEX. BUS. & COM.CODE ANN. § 2.319(a)(1) (Vernon 1994).

3. *See, e.g., Cartlidge v. Hernandez,* 9 S.W.3d 341, 346 (Tex.App.—Houston [14th Dist.] 1999, no pet.); *C-Loc Retention Sys., Inc. v. Hendrix,* 993 S.W.2d 473, 476 (Tex.App.—Houston [14th Dist.] 1999, no pet.); *Conner v. ContiCarriers and Terminals, Inc.,* 944 S.W.2d 405, 411 (Tex.App.—Houston [14th Dist .] 1997, no writ); *Linton v. Airbus Industrie,* 934 S.W.2d 754, 757 (Tex.App.—Houston [14th Dist.] 1996, writ denied); *Hotel Partners v.*

*KPMG Peat Marwick,* 847 S.W.2d 630, 632 (Tex.App.—Dallas 1993, writ denied); *see generally Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex.1991) (noting that a trial court's findings of fact are reviewed for legal and factual sufficiency of the evidence); W. Wendell Hall, *Standards of Review in Texas,* 29 ST. MARY'S L.J. 351, 375–76 (1998).

4. *Adams v. H & H Meat Products, Inc.,* 41 S.W.3d 762, 769 (Tex .App.—Corpus Christi 2001, no. pet. h.); *Amerada Hess Corp. v. Wood Group Prod. Tech.,* 30 S.W.3d 5, 11 (Tex.App.—Houston [14th Dist.] 2000, pet. denied).

A Texas court may exercise jurisdiction over a nonresident if doing so is: (1) authorized by the Texas "long-arm" statute;[5] and (2) consistent with federal and state constitutional due process guarantees. *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex.1996). The Texas long-arm statute authorizes the exercise of jurisdiction over nonresidents "doing business" in Texas. Tex. Civ. Prac. & Rem.Code Ann. § 17.042 (Vernon 1997). In addition to the acts it specifies, the long-arm statute provides that other, unspecified acts by a nonresident may also constitute doing business. *Id.*[6] However, the broad language of this doing business requirement permits the statute to reach as far as federal constitutional requirements of due process will allow. *CSR*, 925 S.W.2d at 594. Because the doing business concept extends as far as due process will allow, it follows that any activity or contact which satisfies due process also constitutes doing business, and that any activity or contact which does not satisfy due process cannot constitute doing business. *Id.* As a practical matter, therefore, we need not analyze the doing business requirement apart from the due process requirement since the scope of each is coextensive. *See id.*

In order for a court's assertion of jurisdiction over a nonresident defendant to comport with due process, (1) the defendant must have purposefully established minimum contacts with the forum state such that it could reasonably anticipate being sued in that state; and (2) the exercise of jurisdiction must comport with fair play and substantial justice. *Dawson–Austin v. Austin*, 968 S.W.2d 319, 326 (Tex.1998). A defendant's contacts with a forum state can give rise to either specific or general jurisdiction. *CSR*, 925 S.W.2d at 595.

Specific jurisdiction is established where the alleged liability arises from activity conducted within, or "purposefully directed" toward, the forum state and involves a less demanding minimum contacts analysis than general jurisdiction. *CSR*, 925 S.W.2d at 595. Although the existence of jurisdiction will vary with the quality and nature of a defendant's activity, it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citing *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). The unilateral activity of those who claim a relationship with a nonresident defendant cannot satisfy this requirement. *Id.*

Conversely, general jurisdiction exists where the defendant has had continuous and systematic contacts with the forum state, even if the cause of action did not arise from the defendant's purposeful conduct in that state. *CSR*, 925 S.W.2d at 595.[7] Accordingly, to prevail on a special appearance, a nonresident defendant must

---

**5.** *See* Tex. Civ. Prac & Rem.Code Ann. § 17.041–.093 (Vernon 1997).

**6.** In addition to other, unspecified acts, a nonresident does business in this State if the nonresident: (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this State; (2) commits a tort in whole or in part in this State; or (3) recruits Texas residents, directly or through an intermediary located in this State, for employment inside or outside this State. Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 1997).

**7.** However, because we conclude below that PVF's contacts are sufficient to support specific jurisdiction, we do not address general jurisdiction.

negate all bases of personal jurisdiction by demonstrating that it: (1) had no systematic and continuous contacts with Texas; (2) did not purposefully direct any act toward Texas; and (3) took no action within Texas that gave rise to the plaintiff's cause of action. *Id.* at 596.

■ To invoke the fair play and substantial justice prong of the due process requirement, a nonresident defendant must present a compelling case that the exercise of jurisdiction over it would be unreasonable.[8] *In re S.A.V.,* 837 S.W.2d 80, 85 (Tex.1992). However, once minimum contacts are established, the exercise of jurisdiction will rarely fail to comport

with fair play and substantial justice. *Id.* at 86.

### Existence of Jurisdiction

PVF contends that two unpaid invoices for goods that were ordered from Texas, partly manufactured in Texas, shipped F.O.B. from Texas, and to be paid for in Texas, are not sufficient to support specific jurisdiction.[9]

■ Cases, such as this, in which a Texas seller sues an out-of-state buyer often present a tenuous due process analysis, and "[n]arrow factual distinctions will often suffice to swing the due process pendulum." *U-Anchor Adver., Inc. v. Burt,* 553 S.W.2d 760, 764 (Tex.1977).[10] Howev-

---

**8.** The factors to be considered include: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental social policies. *In re S.A.V.,* 837 S.W.2d at 86.

**9.** In opposing PVF's special appearance, Pro Metals submitted affidavits showing that: (1) PVF placed thirty separate purchase orders with Pro Metals; (2) many of the pipe and pipe fitting components were manufactured in Texas; (3) the goods were purchased from Pro Metals's Texas inventory; (4) PVF was responsible for the payment of freight because the goods were shipped "F.O.B. Houston;" (5) payment of goods was to be made to Pro Metals's office in Texas; and (6) PVF initiated contact with Pro Metals by requesting information about its products.

**10.** Factors the courts have relied upon in determining whether a Texas court has personal jurisdiction over a nonresident buyer have included: (1) the state in which the agreement was solicited (and by whom), negotiated, consummated, and performed; (2) whether, after entering into the agreement, the nonresident directed communications to Texas in furtherance of the transaction(s); (3) whether the nonresident earned a profit in Texas from the transaction(s); (4) whether the

nonresident paid the cost to ship the goods from Texas; (5) whether the nonresident placed follow-up orders; (6) whether Texas law governed the transactions; and (7) whether payments were sent or to be sent to Texas. *Compare–U–Anchor Adver., Inc. v. Burt,* 553 S.W.2d 760, 761 (Tex.1977) (holding no jurisdiction over nonresident customer where contract was solicited, negotiated, and consummated in Oklahoma for billboards to be built in Texas and erected in Oklahoma, payments were made to Texas, and defendant would not earn a profit from Texas and had no other contact with Texas); *and 3–D Electric Co. v. Barnett Constr. Co.,* 706 S.W.2d 135, 143 (Tex.App.—Dallas 1986, writ ref'd n.r.e.) (holding that Texas lacked jurisdiction over a Tennessee general contractor which orally solicited and contracted with a Texas electrical contractor to perform electrical work in Colorado and which directed payments, telephone calls, and correspondence to Texas); *with Southwest Offset Inc. v. Hudco Publ'g Co.,* 622 F.2d 149, 150 (5th Cir.1980) (holding that jurisdiction existed over nonresident printing customer, despite the fact that Texas printer solicited the business in Alabama and nonresident sent no personnel to Texas, because nonresident: placed additional orders from which *it expected to profit,* sent payments to Texas, sent and received printing materials to and from Texas, paid for shipping of printed goods from Texas, and sent payments to Texas; the transactions were governed by Texas law; and substantial

er, we disagree with PVF that the only activity that may be considered in determining specific jurisdiction are the two transactions that are actually in dispute in this case. Rather, in order for specific jurisdiction to exist, the litigation must merely result from alleged injuries that "arise out of or relate to" the nonresident defendant's activities that have been purposefully directed to the forum. *Burger King*, 471 U.S. at 472, 105 S.Ct. 2174; *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex.1991). Thus, with respect to interstate contractual obligations, parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state have availed themselves of the privilege of conducting business there and are subject to the specific jurisdiction of the other state for the consequences of those activities. *Burger King*, 471 U.S. at 473, 475–76, 105 S.Ct. 2174.[11] In order to determine whether litigation results from injuries that arise out of or relate to activities a defendant has purposefully directed to another state, all of the activities the defendant has so directed to that state must obviously be taken into consideration. Conversely, where, as here, a nonresident defendant has conducted numerous transactions in another state, limiting the determination of whether the defendant has purposefully availed itself of the privilege of doing business in that state to only the transaction(s) the defendant is alleged to have breached there would render the determination meaningless. Therefore, at a minimum, the entire sequence of transactions that PVF has entered into with Pro Metals must be considered in determining wheth-

part of performance occurred in Texas); *Beechem v. Pippin*, 686 S.W.2d 356, 358 (Tex. App.—Austin 1985, no writ) (holding that jurisdiction existed over two Georgia residents who leased a machine from a Texas resident because they: (1) solicited and negotiated the lease agreement by two telephone calls to Texas; (2) sent correspondence and payments by mail to Texas; (3) paid for the transfer of the machine from Texas; and (4) caused their insurance agent to contact the Texas resident in Texas to arrange coverage for the machine); *Uvalde Rock Asphalt Co. v. Consol. Carpet Corp.*, 457 S.W.2d 649, 651–52 (Tex. Civ.App.—Beaumont 1970, writ ref'd n.r.e.), *cited with approval in U-Anchor Adver.*, 553 S.W.2d at 764 (noting that jurisdiction existed over an Arizona wholesaler, even though the parties' contract was solicited in Arizona by the Texas manufacturer, because payments were to be made in Texas, the Arizona wholesaler placed several orders with the Texas manufacturer, the goods were delivered F.O.B. Houston, and some orders were to be delivered directly to Texas retailers, indicating the Arizona wholesaler's expectation of profits from Texas); *and J.D. Fields & Co. v. W.H. Streit, Inc.*, 21 S.W.3d 599, 604–05 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (holding that jurisdiction existed over nonresident guarantor of debt to Texas creditor based only on sending a guaranty agreement to Texas; and discussing the general pattern of Texas cases holding likewise). However, the fact that a state's law governs a dispute does not necessarily confer upon its courts jurisdiction over the parties. *Shaffer v. Heitner*, 433 U.S. 186, 215, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). Moreover, if unilateral activity by a Texas resident cannot constitute purposeful availment by a nonresident, the fact that the Texas resident performs his part of the contract in Texas would seem to be of little consequence in the due process analysis.

11. In addition:

A State generally has a "manifest interest" in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. Moreover, where individuals "purposefully derive benefit" from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed.

*Burger King*, 471 U.S. at 473–74, 105 S.Ct. 2174.

er PVF has purposefully directed activities to this State for purposes of specific jurisdiction.

▬▬ Turning, then, to whether PVF's activities in Texas are sufficient to establish specific jurisdiction, we note in particular that: (1) although the record is unclear whether the parties' relationship was originally solicited in Texas, Pro Metals offered evidence, and the trial court expressly found, that PVF issued thirty separate purchase orders to Pro Metals in Texas; and (2) Pro Metals has alleged, and PVF has not denied, that PVF sought and obtained approval to purchase goods from Pro Metals on credit [12] and that the goods PVF purchased from Pro Metals were for resale to others. In light of these considerations, PVF can hardly be described as a "passive customer of a Texas corporation [which] neither sought, initiated, nor profited from [a] single and fortuitous contact with Texas." *U–Anchor,* 553 S.W.2d at 763. Rather, if anything, PVF created a continuing relationship and continuing obligations with Pro Metals for the purpose of earning a profit from its purchasing activity in Texas.[13] It thereby availed itself of the privilege of conducting business here and subjected itself to the specific jurisdiction of this State for the consequences of those activities. *See Burger King,* 471 U.S. at 473, 475–76, 105 S.Ct. 2174. Accordingly, PVF did not negate the existence of specific jurisdiction, and

the judgment of the trial court overruling its special appearance is affirmed.

FROST, J. dissenting.

KEM THOMPSON FROST, Justice, dissenting on motion for rehearing.

I respectfully dissent. Given the facts in this record and Texas Supreme Court precedent, the due process pendulum should swing in the other direction. This court should sustain P.V.F., Inc.'s challenge to the trial court's denial of its special appearance, and this court should remand with instructions to dismiss for lack of personal jurisdiction.

Courts have long rejected the notion that any link to the forum state in a business transaction is sufficient to subject nonresident participants to the jurisdiction of that forum's courts. *See, e.g., Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (stating that an individual's contract with an out-of-state party cannot by itself establish sufficient minimum contacts in the other party's home forum); *TeleVentures, Inc. v. Int'l Game Tech.,* 12 S.W.3d 900, 908–09 (Tex.App.—Austin 2000, pet. denied) (merely contracting with a Texas corporation does not satisfy the minimum-contacts requirement); *Magnolia Gas Co. v. Knight Equip. & Mfg. Corp.,* 994 S.W.2d 684, 691–92 (Tex.App.—San Antonio 1998, no pet.) (neither contracting with a Texas corporation nor the partial performance of

**12.** Pro Metals's petition alleges that PVF's purchases were made on "credit extended to PVF" and refers to an attached document on PVF's letterhead entitled "Credit Reference," which states "please find below the information which you requested concerning our application for credit," followed by names and addresses of three "credit references." PVF has not disputed that it requested and received credit approval from Pro Metals or that the purchases at issue in this case were made pursuant to its request for credit.

**13.** Although the record does not indicate that any such profit has been earned from resales in Texas, no rationale exists for requiring a profit to be earned within the State if sufficient activities are otherwise purposefully directed here. In addition, specific jurisdiction has been found over non-resident buyers without requiring that they earned a profit in Texas. *See, e.g., Southwest Offset,* 622 F.2d at 151–52.

a contract in Texas is sufficient to establish personal jurisdiction). An essential goal of the minimum contacts analysis is to protect the out-of-state defendant. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291–92, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990). This goal would be thwarted if a nonresident were subjected to the jurisdiction of a forum state's courts based only upon a contract with, or purchase of goods from, a party in the forum state. Therefore, courts must consider whether the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). It is at this point that the showing necessary for specific jurisdiction over PVF fails.

PVF, a supplier to the poultry industry, has no offices or facilities outside of Delaware. Almost all of its sales are made to residents of Delaware, Pennsylvania, and Maryland. PVF has never sold any goods in Texas, nor maintained any office or other place of business in Texas. PVF has never solicited business in Texas. PVF has never extracted any profit from Texas. Nothing in the record suggests that PVF has ever taken any action to exploit the Texas marketplace. PVF merely purchased goods (pipe and pipe fittings) from Pro Metals, Inc., a Texas seller, that took the goods from its inventory in Texas and shipped them F.O.B. Houston, to PVF in Delaware. Pro Metals's act of shipping the goods F.O.B. Houston does not, by itself, give a Texas court jurisdiction over PVF. *See Sun–X Int'l Co. v. Witt,* 413 S.W.2d 761, 768 (Tex.Civ.App.—Texarkana 1967, writ ref'd n.r.e.) (finding no personal jurisdiction where seller shipped goods F.O.B. Houston).

PVF placed the two telephone orders at issue in this case from its office in Delaware. Although PVF sent payments on other orders to Texas, the record contains no evidence of any agreement by PVF to perform any obligation in Texas. In fact, the trial court expressly rejected Pro Metals's proposed finding that "Payment for the goods purchased by PVF, was due to be made to Pro Metals in the State of Texas...." PVF did not send any payment on these two telephone orders to Texas, but even if it had, merely purchasing goods from, and sending payments to, Texas do not constitute sufficient minimum contacts for the exercise of either general or specific jurisdiction. *See, e.g., U–Anchor Adver., Inc. v. Burt,* 553 S.W.2d 760, 763 (Tex.1977) (defendant who prepared and mailed checks to forum state did not have sufficient minimum contacts with the forum); *Magnolia Gas Co. v. Knight Equip. & Mfg. Corp.,* 994 S.W.2d 684, 691 (Tex. App.—San Antonio 1998, no pet.) ("Furthermore, payments sent to the forum state are not determinative."); *Stuart v. Spademan,* 772 F.2d 1185, 1194 (5th Cir. 1985) ("Spademan's mailing of payments to the plaintiffs in Texas can hardly be termed significant in terms of determining purposeful availment of the benefits of the forum state's laws.").

In *U–Anchor,* a nonresident entered into a three-year written contract with a Texas resident. *U–Anchor,* 553 S.W.2d at 761. The plaintiff/advertising company (Texas resident) was to build and erect billboards at certain locations in Oklahoma in exchange for monthly payments from the nonresident defendant. *Id.* The contract, executed in Oklahoma, expressly required the nonresident defendant to make its payments in Texas. *Id.* The billboards were constructed in Texas and then delivered to the locations in Oklahoma. *Id.* The nonresident defendant paid for six or seven months by sending his checks to the plain-

tiff's office in Texas. *Id.* When the nonresident purchaser defaulted in payment, the plaintiff/advertising company sued the nonresident purchaser in Texas. The nonresident successfully challenged the exercise of personal jurisdiction. *Id.* In affirming the trial court's decision to sustain the nonresident's special appearance, the Amarillo court of appeals found that the nonresident unquestionably was "doing business in Texas," as broadly defined in the Texas long-arm statute, and that the claim arose out of that business; however, the court held that this was not sufficient to subject the nonresident to jurisdiction in Texas. *U–Anchor Adver., Inc. v. Burt,* 544 S.W.2d 500 (Tex.Civ.App.—Amarillo 1976), *aff'd,* 553 S.W.2d 760 (Tex.1977).

The Texas Supreme Court affirmed and held the exercise of specific jurisdiction requires more to establish purposeful availment, noting that the nonresident's "contacts with Texas were not grounded on any expectation or necessity of invoking the benefits and protections of Texas law, nor were they designed to result in profit *from a business transaction undertaken in Texas.*" *U–Anchor,* 553 S.W.2d at 763 (emphasis added). The *U–Anchor* court found the nonresident a *passive customer* of a Texas corporation, who neither sought, initiated, nor profited from his single and fortuitous contact with Texas. *Id.* Like PVF, the nonresident purchaser's only contacts with Texas consisted of purchases and the remission of payments to Texas. *Id.* Even though the claim arose out of the nonresident's contacts, due process required dismissal for lack of jurisdiction. *Id.*

PVF was a "passive customer," as that term is used in *U–Anchor.* Because PVF's contacts are no less attenuated than those in *U–Anchor,* this court, like the *U–Anchor* court, should dismiss for lack of jurisdiction. The majority, however,

reaches the opposite conclusion, finding that PVF's activities in Texas are sufficient to support specific jurisdiction based on (1) PVF's issuance of "thirty separate purchase orders" to Pro Metals in Texas; and (2) Pro Metals's allegation that PVF "sought and obtained approval to purchase goods from Pro Metals on credit" for resale to others. Under controlling precedent, neither finding is sufficient to support specific jurisdiction.

### Issuance of Purchase Orders

In *U–Anchor,* where the defendant also made several payments to Texas before defaulting, the Texas Supreme Court reached a different conclusion than the majority reaches today, specifically stating that the nonresident defendant had "*engaged in no 'activity' in Texas, his only 'activity' being the preparation and mailing of checks from his place of business in Oklahoma.*" *U–Anchor,* 553 S.W.2d at 763 (emphasis added).

Arguably, the contract in *U–Anchor* created a stronger nexus to Texas than the purchase orders PVF placed with Pro Metals. The *U–Anchor* contract was a long-term, three-year agreement establishing a continuing relationship and obligating the nonresident to make 36 payments over time to the Texas plaintiff. *U–Anchor,* 553 S.W.2d at 761. Here, PVF did not make a long-term commitment to remit payments to Texas, nor does Pro Metals's claim involve 36 payments; it involves only two.

### Purchase of Goods on Credit

The majority also finds PVF's purchase of goods on credit for resale to others significant in its determination, concluding that "*PVF created a continuing relationship and continuing obligations with Pro–Metals for the purpose of earning a profit from its interstate purchasing activity.*" The court's analysis of PVF's conduct is flawed because, instead of looking at

whether the nonresident engaged in activities *aimed at extracting a profit from Texas or "designed to result in profit from a business transaction undertaken in Texas,"* the court finds that merely *"earning a profit from ... interstate purchasing activity"* is sufficient for jurisdiction. The majority cites no authority that supports this proposition.

In footnote 13, the majority cites to *Southwest Offset, Inc. v. Hudco Publishing Co., Inc.,* 622 F.2d 149 (5th Cir.1980), for the proposition that "specific jurisdiction has been found over nonresident buyers without requiring that they earned a profit in Texas." However, in that case, the Fifth Circuit found its own authority controlling, not *U–Anchor. Southwest Offset, Inc.,* 622 F.2d at 151 (citing *Prod. Promotions, Inc., v. Cousteau,* 495 F.2d 483 (5th Cir.1974)). Unlike the facts in the record now before us, the parties in *Southwest* had entered into several contracts, all of which were governed by Texas law, and based on this fact, "Hudco [the nonresident], like the defendant in *Cousteau,* could expect that Texas law might govern the enforcement of their contracts." In addition, the Fifth Circuit expressly found that the nonresident had taken action "in order to facilitate the manufacturing process" in Texas and thus "did considerably more than [the nonresident] in *U–Anchor." Id.* at 152. PVF resembles the nonresident defendant in *U–Anchor* more than the nonresident defendant in either *Cousteau* or *Southwest.*

The key to sustaining jurisdiction in Texas is not that the nonresident defendant made a profit somewhere (or anywhere) but rather that it made a profit from *activities in Texas;* in other words, the nonresident's activity must have been calculated to extract profits from the Texas market, thereby creating intentional activity in Texas. *U–Anchor,* 553 S.W.2d at

764. There is simply no evidence of that here. The majority does not, and cannot, find that PVF conducted any activity aimed at extracting profits *from Texas.* The record contains nothing that would even suggest that PVF has earned or will earn any profit from Texas markets or Texas residents. A purchase of goods from a Texas resident for incidental use in making a profit beyond Texas borders is not the same thing as extracting profit from Texas. The majority's failure to appreciate this distinction flaws its entire analysis and results in a finding that is an unprecedented expansion of the supreme court's holding in *U–Anchor.* Under the rationale the majority applies today, any nonresident that purchases goods from a Texas supplier would be subject to jurisdiction in Texas even though it sells its goods outside Texas and extracts no profits from Texas markets.

In *U–Anchor* and in this case, the plaintiff was a Texas company that built or manufactured the goods, at least in part, in Texas. *See id.* Like the nonresident defendant in *U–Anchor,* PVF was aware of these facts at the time it ordered the goods. In *U–Anchor,* as in this case, the payment in the transaction was for the benefit of the Texas resident; the nonresident buyer was not extracting profit from Texas. *Id.* at 763. In *U–Anchor* and in this case, the nonresident had made prior payments to the Texas resident. *Id.* at 761. In *U–Anchor,* the Texas Supreme Court held that a nonresident was not subject to personal jurisdiction in Texas where he entered into a three-year contract requiring 36 payments in Texas, and where he made six or seven payments in Texas. PVF is a nonresident that occasionally places orders and sends payments to Texas and that is not extracting profit from Texas markets. Under *U–Anchor,* PVF cannot be subject to personal jurisdiction in this case. *See id.* at 761–64.

Finally, the majority's reliance on Pro Metals's allegation that PVF "sought and obtained approval to purchase goods on credit" is misplaced. There is no pleading or evidence of why or at whose instance a credit application was submitted to Pro Metals. In fact, the "credit reference" itself reflects that the information was furnished at Pro Metals's request, and the trial court specifically rejected Pro Metals's proposed findings which suggested that PVF initiated the contacts between the parties. No credit application was ever offered into evidence, nor does the record contain the contents or terms of any credit arrangement.

The Texas Supreme Court's decision in *U-Anchor* mandates reversal of the trial court's order denying PVF's special appearance. The facts in this case are not sufficient to sustain specific jurisdiction.