# CIRCUIT COURT OF FAIRFAX COUNTY

Roger Stanley Johnson

v.

J. Richard Niemela et al.

February 13, 2002

Case No. L199813

BY JUDGE ROBERT W. WOOLDRIDGE, JR.

This matter came before me on the motion of Defendant J. Richard Niemela to set aside a foreign judgment docketed against him in this Court on September 7, 2001. The Defendant argues the Texas judgment is void because the Texas court never obtained personal jurisdiction over him. The Plaintiff asserts the Defendant filed this motion over twenty-one days after the judgment was docketed, and, thus, this court does not retain jurisdiction to vacate the foreign judgment or set it aside.

This matter began when the Plaintiff docketed a Texas judgment, pursuant to the Uniform Enforcement of Foreign Judgments Act. See Virginia Code Ann. § 8.01-465, *et seq*. The Plaintiff obtained the Texas judgment through a default action on November 26, 1997, in the County Court, CCL # 3, Dallas County, Texas. The original action arose from an oral agreement between the Plaintiff and Defendant for the sale of a "mototractor," a piece of farm machinery similar to a motorcycle.

A three step analysis is required to decide the issues posed by this case. I must first determine if I may decide this case at all, or if, as the Plaintiff argues, the motion was not timely filed and thus the case is not within the

jurisdiction of this court. If this Court has jurisdiction to determine the validity of the judgment docketed against the Defendant, I must determine if the matter of personal jurisdiction was fully and fairly litigated in the Texas action. If the matter was never litigated in the Texas Court, I must determine if, under Texas law, the Defendant was subject to personal jurisdiction in this matter when the original action was brought in Texas.

The Texas judgment was docketed on September 7, 2001, in the Fairfax County Circuit Court and was assigned Virginia judgment No. 349569. The Defendant was notified of the Virginia judgment on September 15, 2001, and filed the motion to set aside on October 3, 2001. The Plaintiff argues that this court lost the ability to set aside or vacate the judgment twenty-one days after the September 7, 2001, docketing of the Texas judgment. See Rules of the Supreme Court of Virginia Rule 1:1.

The Plaintiff relies on *Washington v. Anderson* in arguing that this court lost jurisdiction of the proceedings in this case twenty-one days after the judgment was docketed. 236 Va. 316 (1988). In *Washington*, a judgment creditor obtained a default judgment in Maryland and took action to domesticate the judgment in Virginia. A default judgment was entered against the judgment debtor in the Virginia proceeding after he failed to respond within the requisite twenty-one days. The judgment debtor then filed a motion to set aside the judgment based on improper service in the underlying Maryland action. The Virginia Supreme Court, in upholding the validity of the judgment stated "[b]y suffering a default, the defendant in the domestication proceeding has lost the opportunity to attack the foreign judgment upon which the Virginia proceeding was based." *Id.* at 320.

However, the judgment at hand was docketed under the Uniform Enforcement of Foreign Judgments Act. This process is different than the domestication proceeding used in *Washington*. Under UEFJA, a party simply dockets a foreign judgment in a circuit court and the court mails out notification to the judgment debtor to an address provided by the judgment creditor. See Code of Virginia § 8.01-465.3. Under a domestication proceeding, the parties are bound by all of the normal civil procedure rules that pertain to an action filed in a circuit court. While the appellate courts in Virginia have not dealt with this issue since UEFJA was adopted in Virginia, there have been several circuit court decisions relating to the ability of a party to challenge a foreign judgment docketed pursuant to UEFJA. While not binding, a very instructive opinion was written by Judge Johnson of the Circuit Court for the City of Richmond. In *Empire Beauty School v. Bell*, Judge Johnson distinguished *Washington* as it applies to cases involving

UEFJA. 2001 WL 1018802 (Va. Cir. August 28, 2001) As codified in Virginia, UEFJA contains no mechanism for challenging the foreign judgment's being docketed in a Virginia court. However, the Act does state "[a] judgment so filed has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of a circuit court of any city or county of this Commonwealth and may be enforced or satisfied in like manner." *Empire Beauty School, supra* (citing Virginia Code § 8.01-465.2).

A party may ask a court to set aside a void judgment at any time according to Virginia Code § 8.01-428(A). Taking the language from § 8.01-465.2 and applying this principle, a party may attack as void a foreign judgment docketed pursuant to UEFJA at any time, otherwise a foreign judgment would bear greater protection than a judgment obtained and docketed by a citizen of the Commonwealth. As Judge Johnson stated succinctly, "while this court understands its responsibility to give full faith and credit to judgments of other states, it refuses to give foreign judgments a higher status than judgments obtained in Virginia." *Empire Beauty School, supra.* Accordingly, this Court may always review a judgment attacked as void, whether it be a Virginia judgment or a foreign judgment docketed under UEFJA.[2]

With the initial question answered, we must now turn to whether this Court can inquire into the personal jurisdiction of the Texas court over the Defendant. A court may generally inquire into a foreign court's jurisdiction without offending the Full Faith and Credit Clause of the United States Constitution. *Bloodsworth v. Ellis*, 221 Va. 18, 21 (1980). "Where, however, the second court's inquiry discloses that those [jurisdictional] questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment, the second court is precluded from re-examining the jurisdiction of the court rendering the original judgment." *Id.* (citing *Durfee v. Duke*, 375 U.S. 106, 111 (1963)). The question at hand is whether the matter was fully and fairly litigated in Texas.

In this case, the Texas judgment was obtained by default. A review of the Texas pleadings as well as from the testimony of both plaintiff and defendant shows that the defendant made no appearance in the Texas proceedings. For purposes of reviewing the jurisdiction of the Texas court, this is an important distinction. Determining whether a party made a special appearance to object

---

[2] Counsel for the Plaintiff correctly points out that I held to the contrary in *Leasecomm Corp. v Product Group*, 46 Va. Cir. 135 (Fairfax 1998). But consistency is an overrated virtue, and Judge Johnson's reasoning is more persuasive.

to personal jurisdiction or suffered a default without appearance is critical in this analysis. Since a judgment entered by a foreign court is not owed full faith and credit if the foreign court did not have jurisdiction in the case, "[a] defendant sued in a foreign jurisdiction may elect not to appear, thereby reserving the right to dispute jurisdiction subsequently, because the jurisdiction question has never been actually litigated." *Tomai-Minogue v. State Farm Mutual*, 770 F.2d 1228, 1233 (4th Cir. 1985) (internal citations omitted). This is in contrast to a situation where a defendant makes a special appearance to object to the jurisdiction issue and the matter is decided by the original forum state. See *Id.* When a defendant has specially appeared, the matter was fully and fairly litigated and the judgment is entitled to full faith and credit "even as to the existence of personal and subject matter jurisdiction." *Id.*

The Defendant in the instant case did not appear in the Texas action to contest jurisdiction. Instead, he chooses to contest the issue of the Texas Court's exercise of personal jurisdiction in this Court. "Issues concerning the jurisdiction of the court rendering the original judgment are determined by examining the law of the state in which the original judgment was entered." *Bloodsworth*, 221 Va. at 22. We must now turn to Texas law in determining the issues of personal jurisdiction in this case.

"A Texas court may exercise jurisdiction over a nonresident if two conditions are met. First, the Texas long-arm statute must authorize the exercise of jurisdiction. Second, the exercise of jurisdiction must be consistent with federal and state constitutional guarantees of due process." *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex. 1990). The Texas long-arm statute, being similar to our Virginia equivalent, authorizes the Texas courts to exercise jurisdiction over anyone "doing business" in the state. *Id.* The Texas Court of Appeals has noted that "the broad language of this doing business requirement permits the statute to reach as far as federal constitutional requirements of due process will allow." *P.V.F., Inc. v. Pro Metals, Inc.*, 60 S.W.3d 320, 324 (Tex. Ct. App. 2001). Since this "doing business" concept extends to the limits of due process, any exercise of jurisdiction that would satisfy the due process requirement would also satisfy the "doing business" requirement. *Id.* The Court in *Pro Metals* indicated that, as a "practical matter . . . we need not analyze the doing business requirement apart from the due process requirement since the scope of each is coextensive." *Id.* (citing *CSR, Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996)).

For a court to assert jurisdiction over a nonresident defendant and comply with due process, two hurdles must be overcome. First, the defendant must have purposefully established minimum contacts with the forum state such

that they could reasonably anticipate being sued in that state. Second, the exercise of jurisdiction must comport with fair play and substantial justice. *Dawson-Austin v. Austin*, 968 S.W.2d 319, 326 (Tex. 1998). The defendant's contacts may give rise either to specific or general jurisdiction. *Pro Metals*, 60 S.W.3d at 324. "Specific jurisdiction is established where the alleged liability arises from activity conducted within, or purposefully directed toward, the forum state and involves a less demanding minimum contacts analysis than general jurisdiction." *Id.* (citing *CSR*, 925 S.W.2d at 595).

I first turn to whether the Defendant established the requisite minimum contacts with Texas. Minimum contacts are established when "the non-resident defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Purposeful availment may occur by actions or even a single act for which the defendant "should reasonably anticipate being haled into court in the forum state." *Simmons v. Caterpillar, Inc.*, 874 F. Supp. 762, 764 (E.D. Tex. 1995). In *Pro Metals*, the Texas Court of Appeals stated, "thus with respect to interstate contractual obligations, parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state have availed themselves of the privilege of conducting business there and are subject to the specific jurisdiction of the other state for the consequences of those activities." 60 S.W.3d at 326.

In the case at hand, the Defendant called the Plaintiff in Texas to offer for sale the "mototractor." This occurred after the Defendant's daughter engaged the Plaintiff in conversation in Texas, explained what her father was selling, and asked if the Plaintiff was interested in purchasing such an item. After the Defendant made the initial phone call to Texas, he sent at least three more items of correspondence to the Plaintiff. He sent a magazine article detailing the specifics of the product in question, he sent price sheets and pictures of the product, and finally he sent the Plaintiff a videotape of the machine. During their numerous phone conversations, the Defendant inquired if the Plaintiff would be interested in becoming a dealer of these products and gave him the name of at least two individuals in Texas who had purchased the products from a previous company with which the Defendant was also a principal officer.

The Defendant represented to the Plaintiff that the equipment would be sent directly from the Chinese assembly plant to Texas after the Plaintiff sent a check to the Defendant in Virginia. The Plaintiff sent the Defendant a check made out to the corporate Defendant in this case. The check, drawn on an account held by a Texas bank, was cashed. After a period of time, the Plaintiff had not received the product and requested his money back. Thereafter, the

Defendant and Plaintiff exchanged what both described as multiple phone calls trying to reach a settlement. Only after these attempts, did the Plaintiff retain counsel, send a demand letter to the Defendant, and file suit in the Texas court.

I find that the Defendant established the necessary relationship with the Plaintiff in Texas to meet the minimum contacts prong of the due process analysis. However, even when a party meets this prong, a court must still examine if asserting jurisdiction over a party will offend "traditional notions of fair play and substantial justice." See *International Shoe*, 326 U.S. 310, 316 (1945). Texas courts look to a number of factors in determining if this prong of the due process analysis is met. Consideration is given "to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation." *Schlobohm*, 784 S.W.2d at 358.

Although one must balance the equities of the burdens to each party in litigating this issue in Texas, the Defendant should not have been surprised when the Texas court attempted to assert jurisdiction over him. In *Pro Metals*, the Texas appellate court stated "[a] state generally has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." 60 S.W.3d at 327, n. 11. Further, the Plaintiff was always in Texas, as the Defendant was aware. The Defendant promised to ship the equipment to the Plaintiff in Texas. The fact that the Defendant would have been inconvenienced in litigating this matter in a Texas court is not enough, standing alone, to offend traditional notions of fair play and substantial justice.

Accordingly, I find this court does retain jurisdiction over this matter and has the power to vacate or set aside the Virginia judgment docketed pursuant to Virginia Code § 8.01-465.2 (UEFJA). However, upon reviewing the Texas judgment, I find that the Texas court acted properly in asserting personal jurisdiction over the Defendant and entering the default judgment. I deny the Defendant's motion to vacate or set aside the Virginia judgment.