# CIRCUIT COURT OF GOOCHLAND COUNTY

Alajmi Abdulhadi

    v.

Bavarian Auto Sales, L.L.C.

## February 11, 2013

## Case No. CL11-203

BY JUDGE TIMOTHY K. SANNER

The purpose of this letter is to provide the Court's rulings with respect to the above-referenced case. This case was referenced by the name in which it was filed; the Court is mindful that Mr. Alajmi's name has been corrected since this matter has come before our court. The Court will hereafter refer to him as "Alajmi" and to the defendant as "Bavarian."

Counsel is well familiar with the facts of the case, and the Court will not go into them in great detail. Generally speaking, they are properly set forth in the proffer contained in pages 8 through 14 of the transcript from the February 28, 2012, hearing. They also appear to be properly set forth in pages 2 through 8 of Bavarian's brief in support of its motion to vacate and set aside foreign default judgment. Generally, the case involved the sale of a 2000 Jeep Cherokee by Bavarian, a Virginia LLC, to Alajmi, an Oregon resident, who was overseas at the time of the transaction. Bavarian placed the Jeep on eBay for auction, with reserve, and Alajmi was the ultimate winning bidder. The parties completed the paperwork on the transaction in late January of 2011, and, ultimately, the vehicle was shipped to Alajmi in Oregon. Thereafter, Alajmi became dissatisfied with the vehicle and filed an action against Bavarian in the Circuit Court of Washington County, Oregon. Service of process was effected on August 1, 2011, by Deputy J. F. Henley of the Goochland County Sheriff's Office on

Jonathan Davis, who was noted on the return of service as a managing agent (manager) of Bavarian. Bavarian did not answer nor appear in the Circuit Court of Washington County, and, on September 29, 2011, a default judgment was entered against Bavarian.

On November 7, 2011, Alajmi filed in the Clerk's Office of the Circuit Court of Goochland County the Oregon default judgment against Bavarian, seeking its domestication pursuant to the Virginia Uniform Enforcement of Foreign Judgments Act (Virginia Code § 8.01-465.1 *et seq.*). Bavarian has filed this action seeking to vacate and set aside this default judgment, contending that Bavarian was not properly served under the Oregon Rules of Civil Procedure and that the Oregon court lacked personal jurisdiction over Bavarian.

Bavarian initially contends that service of process was not properly effected under ORCP 7(D)(3)(c) which provides how service may be effected upon a limited liability company. Bavarian takes this position primarily because it is stipulated that Jonathan Davis, the person upon whom process was served, was not a managing agent of Bavarian. Alajmi countered that service is proper because Jonathan Davis had apparent authority to act as a manager of Bavarian. Alternatively, Alajmi contends that Bavarian was properly served because Jonathan Davis was a "clerk on duty in the office of the registered agent" upon whom service could be made under the pertinent rule and that the service that was effected was reasonably calculated to provide notice and opportunity to defend and thus also served as a proper basis for service of process.

The Court will first address the contention that Jonathan Davis's apparent authority to accept service was legally sufficient under the law of Oregon.

It is stipulated that Jonathan Davis was not a manager of Bavarian. While Alajmi properly sets forth general principles of agency law established in the cited Oregon cases, the Court agrees with Bavarian that they are inapplicable to the issue here. The Court agrees that the cases of *Pham v. Faber*, 152 Or. App. 634, 955 P.2d 257 (1998), and *Adkins v. Watrous*, 66 Or. App. 252, 673 P.2d 572 (1983), stand for the proposition that, under the Oregon Rules of Civil Procedure, service of process is strictly construed. Given the fact that Jonathan Davis was not a manager of the LLC, service was not properly effected upon him in that capacity, despite the representations contained in the proofs of service.

Alternatively, Alajmi contents that Jonathan Davis could be construed as a clerk on duty in the office of a registered agent, thus, service of process was proper given that provision of the Oregon rule. The evidence establishes that Mohammad Q. Stwodah, was the registered agent for Bavarian, as well as its sole member. The Court finds from the evidence that the address of 12638 Broad Street Road, Richmond, Virginia 23233, was both the business address as well as the office of the registered agent. Alajmi cites the case of *Abbotts v. Bacon*, 133 Or. App. 315, 891 P.2d 1321

(1995), which contains an excellent discussion of what constitutes a clerk under the pertinent Oregon rule. In this case, the Oregon Court of Appeals notes that the term clerk is not defined in the rules. Having fully considered the legislative history, the Oregon court concluded that the legislature intended the term to encompass those employed in the registered agent's office who interact with the public, have regular contact with the registered agent, and for whom there is some obligation to pass along documents to the registered agent. *Abbotts*, at 320.

Having reviewed the evidence in this case, the Court concludes that Jonathan Davis was qualified as a clerk under the pertinent Oregon rule. From reviewing plaintiff's exhibits 1 through 4, it is plain that Jonathan Davis was an important individual within Bavarian's office. He was a salesperson; so, consequently, he had contact with the public and particularly with Alajmi in this case. He was substantially involved in the preparation and handling of documents in this case, including the buyer's order, as well as signing the certificate of title for the vehicle, not only when it was sold by Bavarian, but also when it was purchased in August of 2010. From the proof of service, the Court finds that he was personally served by Deputy Henley. There is no evidence that he resisted receiving the service of process, which is consistent with the other evidence that establishes his importance within the office. While there is no specific evidence before the Court regarding his duty to pass along documents to the registered agent, in this case, the registered agent is also the sole member of the LLC and Jonathan Davis's employer; consequently, the Court would infer that Jonathan Davis would understand the importance of passing along documents to a person occupying both of those roles with respect to service of process related to an out of state civil action.

The Court next turns to the issue as to whether the evidence supports Alajmi's contention that the Oregon court had jurisdiction over Bavarian via its long-arm statute, ORCP 4. Alajmi specifically contends that provisions 4(E)(3) and (5) establish personal jurisdiction over Bavarian. The Court will address subsection three first. The Court agrees with Bavarian's argument set forth in its reply brief as to the inapplicability of subsection three. The evidence does not establish that Bavarian promised to deliver the Jeep to Alajmi in Oregon, but instead Alajmi arranged for shipping from the vehicle's location in Virginia.

Subsection five, however, is more problematic for Bavarian and involves reconciling the holdings in *Ron Tonkin Gran Turismo v. Carruth*, 71 Or. App. 81, 691 P.2d 127 (1984), and *Amundson v. Jackson*, 122 Or. App. 85, 857 P.2d 155 (1993). Subsection five "relates to goods, documents of title, or other things of value actually received in this state by the plaintiff from the defendant or by the defendant from the plaintiff, *without regard to where delivery to carrier occurred*." (Court's emphasis.) In *Amundson*, the Court of Appeals of Oregon found that personal jurisdiction did not

exist under subsection five because the plaintiff in that case purchased two vehicles in California and transported the cars from the warehouse. Under the facts of *Amundson*, it appears that the vehicles were not delivered to the plaintiff in Oregon; he, in fact, took possession in California. Bavarian notes that the *Amundson* court also found that it was not sufficient that the documents of title were ultimately delivered to the plaintiff in Oregon, because, as the *Amundson* court noted, the case was not about anything related to the title to the vehicles, but about alleged misrepresentations related to the condition of the vehicles.

With respect to the *Ron Tonkin* case, the Court reads it somewhat differently than counsel for Bavarian. Bavarian implies that the plaintiff Ron Tonkin promised to deliver the subject vehicle to Oregon. In fact, the case states that the plaintiff Ron Tonkin contracted with Convoy Company, a common carrier, to transport the Ferrari in question and even the defendant Curruth's affidavit noted that the Ferrari was delivered to his agents in California, but makes no mention of the means used to further transport the vehicle to Oregon.

With respect to our case, page 13 of the transcript contains the following stipulated evidence: "The shipping was the responsibility of Mr. Alajmi. He arranged for shipping through a company who picked the vehicle up from Bavarian Motor Sports — Bavarian Auto Sales, and shipped it to Oregon."

Reviewing the language in subsection five of the pertinent rule, and the facts and holding of the *Ron Tonkin* case, it appears to the Court that the law of Oregon places little emphasis on where delivery to a carrier occurred or who pays for it. If, like the plaintiff in *Amundson*, Alajmi had traveled to Goochland, purchased the vehicle, and then transported it home, then there would clearly be no basis for the exercise of personal jurisdiction under this subsection of the long-arm statute. It appears to the Court, however, the circumstances are much more analogous to the circumstances presented in *Ron Tonkin*, where there were negotiations about the purchase of the vehicle, an agreement was reached, and the vehicle was shipped to the state of Oregon, although the defendant never specifically agreed to be responsible for the cost of the shipping. In the end, the *Ron Tonkin* court found that where delivery to carrier occurred was insignificant as long as the vehicle ultimately was shipped to Oregon. Given this, the Court determines that the facts of this case, from a statutory perspective, establish personal jurisdiction over Bavarian via ORCP 4(E)(5).

The next step for the Court to determine will be whether the Oregon court acquiring personal jurisdiction over Bavarian via ORCP 4(E)(5) was constitutionally warranted or whether, as Bavarian argues, it was constitutionally deficient because of Bavarian's lack of minimum contacts with the state of Oregon.

Alajmi contends that, because the Court has found that personal jurisdiction over Bavarian was established by the operation of ORCP 4(E)(5), the Court need not conduct any further constitutional analysis. He cites for this proposition cases such as *Ron Tonkin; State, ex rel. Hydraulic Servocontrols Corp.*, 294 Or. 381, 657 P.2d 211 (1982); *Kotera v. Daioh Int'l USA Corp.*, 179 Or. App. 253, 40 P.3d 506 (2002); and others. The Court finds that the appellate courts of the State of Oregon have, on occasion, ruled as argued. Their basis for having done so is their findings that certain subsections of Oregon's long-arm statute involve situations specifically found by the United States Supreme Court to possess constitutionally permissible minimum contacts.

The problem for Alajmi, however, as noted by Bavarian, is that not all of the specific subsections of Oregon's long-arm statute involve scenarios specifically approved by the decisions of the United States Supreme Court. Most notably, for our purposes, the Court of Appeals of Oregon in *Dreher v. Smithson*, 162 Or. App. 645, 986 P.2d 721 (1999), noted that ORCP 4(E) is not patterned after prior decisions defining the constitutional limitations of personal jurisdiction. Consequently, the *Dreher* court proceeded to conduct constitutional analysis. Given this, this Court must do so as well.

"The due process clause of the Fourteenth Amendment has been held to require that personal jurisdiction over a nonresident defendant be based on "minimum contacts" between the defendant and the forum state." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945). Those contacts must be such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Id.* at 316, quoting *Milliken v. Meyer*, 311 U.S. 457, 61 S. Ct. 339, 85 L. Ed. 278 (1940); *Hydraulic*, at 385. Requiring minimum contacts performs two related but distinct functions: (1) it protects the defendant against the burden of litigating in a distant or inconvenient forum; and (2) it acts to insure that the states, through their courts, do not reach out beyond the limits imposed on them by their statutes as coequal sovereigns in a federal system. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). As the Supreme Court noted in *World-Wide Volkswagen*, the first concern has been made much less burdensome by fundamental changes in the American economy which make it easier for a person to defend himself in a distant state. *World-Wide Volkswagen*, at 293. Subsequently, in recent years, the Supreme Court has focused more on federalism concerns.

Both parties have cited cases from the state courts of Oregon and from the Ninth Circuit Court of Appeals, which have set forth a more detailed analysis when personal jurisdiction over a non-resident defendant is constitutionally permissible. In *Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008), the Ninth Circuit Court of Appeals set forth the three-part test which is utilized: (1) the non-resident defendant must purposefully direct

his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable. The Court also noted that the plaintiff bears the burden on the first two prongs. If the plaintiff establishes both prongs one and two, the defendant must come forward with a "compelling case" that the exercise of jurisdiction would not be reasonable. *Boschetto* citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).

The *Boschetto* court went on to discuss that for cases that sound primarily in contract that a "purposeful availment" standard is utilized. This Court agrees that, even if the term fraud may have been used by Alajmi in the course of his argument, the obligations in this case appear to arise out of the parties' contract and, even under Virginia law, would sound in contract because that is the source of the duty violated. *Cf. Augusta Mutual v. Mason*, 274 Va. 199, 645 S.E.2d 290 (2007), and *Filak v. George*, 267 Va. 612, 594 S.E.2d 610 (2004). Under the purposeful availment analysis, the defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state. This involves a qualitative evaluation of the defendant's contact with the forum state. *Boschetto*, at 1017. The Court in *Boschetto* noted that, in doing so, it was guided by the Supreme Court's admonition that the formation of a contract with a nonresident defendant is not, standing alone, sufficient to create jurisdiction. *Burger King*, at 478.

*Boschetto* was expanded upon by the United States District Court for the District of Oregon in the case of *Emmert Industrial Corp. v. Copeland Equipment Parts*, 2009 U.S. Dist. LEXIS 69961, 2009 WL 2447550. Beyond finding the creation of one contract to be insufficient, the Court noted that the type of party who would be subject to personal jurisdiction was one who reached out beyond one state and creates continuing relationships and obligations with citizens of another state and, therefore, would be subject to regulation and sanctions in the other state for the consequences of his or her activities. *Emmert*, 2009 U.S. Dist. LEXIS 69961, [WL] at *4. The continuing relationship must create a substantial connection between the defendant and the forum state and not one that is merely "random, fortuitous, or attenuated." *Id.*

Counsel for Bavarian has provided a good discussion of how various courts, including that in *Boschetto*, have analyzed eBay cases in light of the above-discussed principles. As noted by counsel for Bavarian, most states addressing the issue have determined that selling a vehicle over eBay does not establish that the seller intended to purposefully avail himself of the benefits of the forum in which the purchaser resided.

In our case, it appears that counsel for each side, in the end, returned to the *Boschetto* decision in support of their respective positions. "As noted by Bavarian, the Court found that the seller in *Boschetto* had not purposefully availed himself of the benefits of doing business in California, that eBay acted as a "virtual forum" for the sale rather than a "distribution center", that the choice of a winning bidder was beyond the seller's control, and that the buyer made arrangements to ship the car, not the purchaser. The Court went on to note that a lone transaction for the sale of one item does not establish that the seller purposefully availed himself for the privilege of doing business in California.

Alajmi notes, however, the *Boschetto* court cited other factors which might lead to a different result. *Boschetto* notes that other courts have found that jurisdiction was proper based on an eBay sale, when the evidence established that the defendant was using the platform as a broader vehicle for commercial activity. *Cf. Crummey v. Morgan*, 965 So. 2d 497, 500. The *Boschetto* court noted that the result may be different when the evidence established a seller's use of eBay was regular and systemic or that the sellers were eBay "power sellers." *Malcolm v. Esposito*, 63 Va. Cir. 440 (2003).

The question for the Court then is how does our evidence fit within this applicable legal standard. In support of its position, Bavarian notes: Bavarian is and has always been a Virginia LLC; Bavarian is licensed to do business only in the Commonwealth of Virginia; Bavarian has never maintained an office in Oregon; Bavarian's offices have always been solely in Virginia; Bavarian is not, and has never been, a resident of the state of Oregon; Bavarian is not, and has never been, licensed to do business in Oregon; Bavarian has never conducted business in the State of Oregon; Bavarian has never opened up any business entity in Oregon; Bavarian did not, and has never, purposefully availed itself of the jurisdiction of Oregon voluntarily; Bavarian does not own, and has never owned, any real property in Oregon; Bavarian has never actively solicited customers in Oregon; the January 2011 auction conducted by Bavarian was conducted with reserve; Bavarian cannot target or solicit potential auction bidders for the vehicle in any particular jurisdiction, including Oregon; Bavarian did not learn of Alajmi's identity and location until the end of the eBay auction when Bavarian declared him as the winning bidder; the location of the item was listed as Richmond, Virginia; the auction terms required that the buyer was responsible for vehicle pickup or shipping; all financial transactions were to be completed before the delivery of the vehicle; Alajmi was not actually in Oregon at the end of the auction, when his bid was declared as the winning bid, but was in fact "overseas"; he remained overseas when he executed and returned the buyer's order; in fact, there is no evidence that Alajmi actually executed any documents related to the eBay transaction while in Oregon; and, Alajmi arranged for the vehicle to be shipped from Virginia to Oregon.

Alajmi notes, in support of his position the following: The buyer's order dated January 21, 2011, reflected Alajmi as the buyer and set forth his Oregon address; a five day period of financing took place; and the economic harm to Alajmi occurred in Oregon where the vehicle's alleged defects were discovered.

Alajmi contends that Bavarian's sales are a regular part of its commercial business and are used as a broader vehicle for commercial activity without citing much evidence for that position. The Court has taken the time to review the pages of defense exhibit one, which relates to the eBay auction. The Court will note that there are references within the documents from which the Court infers that this was not Bavarian's first and only eBay sale. The Court will note initially that in the seller information on the first page of the exhibit, the seller is listed as "bavarianmotorsports" and it is noted that the seller has a "93% positive feedback". This suggests to the Court that this was not Bavarian's first and only sale, but, making other conclusions about what that means would lead the Court to engage in speculation rather than drawing reasonable inferences from the evidence. On what has been marked on pages of the record as pages 108 and 111, which are all part of defense exhibit one, there are references to "all vehicles are sold as is with no warranty." (Page 108.) "[B]y bidding on our auctions, you are in agreement to our complete terms of sale." (Page 111.) All of this suggests to the Court that this was not Bavarian's one and only eBay auction, but again, the Court has no specific evidence as to how many auctions were conducted by Bavarian before or during this time period and whether any of them involved Oregon residents.

As a result, the Court finds Bavarian's argument that, based on these collective facts, the Oregon court did not have constitutionally permissible personal jurisdiction over Bavarian to be compelling. Setting aside this one eBay sale, plainly there is no evidence that Bavarian did anything to purposefully avail itself of doing business in the state of Oregon for the reasons outlined above. In conducting the eBay auction, Bavarian was oblivious as to who the winning bidder would be and to the location from which the winning bid would come. It is plain, by contrast, that the sale was conducted in Virginia, that the vehicle was located in Virginia, and that the buyer would be responsible for transporting the vehicle from the Virginia location in the manner the buyer preferred. Also, as argued by Bavarian, Alajmi was not even in Oregon at the time he bid on and actually won the vehicle in question.

Furthermore, while the evidence would lead the Court to infer that this was not Bavarian's one and only eBay auction, the Court simply has no evidence as to whether this is Bavarian's second, third, or 3,000th sale via eBay. There is no evidence within defendant's exhibit one that Bavarian is denoted as a "power seller." Additionally, there is no evidence that Bavarian ever sold a car by eBay auction, or any other manner, to any resident in

Oregon. For all of these reasons, the Court concludes the Circuit Court of Washington County's exercise of personal jurisdiction over Bavarian was not constitutionally permissible.

Having determined that the Oregon court does not have jurisdiction over Bavarian, the next question is what impact does this have upon the proceedings in Virginia. It appears to be uncontested that Alajmi has sought to domesticate the Oregon judgment pursuant to Virginia Code § 8.01-465.2. Language within that statute provides "The clerk shall treat the foreign judgment in the same manner as a judgment of the circuit court of any city or county of this Commonwealth. A judgment so filed has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of the circuit court of any city or county of this Commonwealth and may be enforced or satisfied in like manner."

As a consequence, the Oregon default judgment is subject to being set aside pursuant to Virginia Code § 8.01-428. Two excellent circuit court cases which discuss this procedure are *Johnson v. Niemela*, 58 Va. Cir. 199 (2002) (J. Wooldridge), and *Empire Beauty School v. Bell*, 58 Va. Cir. 32 (2001) (J. Johnson). In *Johnson*, Judge Wooldridge, quoting Judge Johnson, notes "While this court understands its responsibility to give full faith and credit to judgments of other states, it refuses to give foreign judgments a higher status than judgments obtained in Virginia." *Johnson*, 58 Va. Cir. 199, 201. The Court will note the existence of an issue in *Johnson*, which did not appear in our case. There has been no argument made that the Oregon court ever had the issue of personal jurisdiction fully and fairly litigated there. Had that occurred, the Court likely would have been precluded from addressing the issue here. The Court infers, given the default nature of the Oregon judgment, that the issue was not fully and fairly litigated.

As is noted in *Shelton & Luck v. Sydnor*, 126 Va. 625, 102 S.E. 83 (1920), jurisdiction is the power to adjudicate a case upon the merits and dispose of it as justice may require. This necessarily involves the idea that there must be the jurisdiction over the subject matter of the litigation and also over the parties thereto. If either is wanting, the resulting judgment is void.

Given that the Oregon court had no jurisdiction over Bavarian, the judgment entered against Bavarian is void. Consequently, pursuant to Virginia Code § 8.01-428, upon proper motion, the Court may set the default judgment aside. For the reasons discussed herein, the Court determines that relief sought should be granted, and the Court orders the [November 7, 2011, judgment of the Circuit Court of Goochland County] entered against Bavarian vacated and set aside.