**Opinion issued November 1, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

———————————————

## NO. 01-11-00664-CV

———————————————

**NANCE INTERNATIONAL, INC., Appellant**

**V.**

**OCEANMASTER ENGINEERING PTE, LTD, Appellee**

**On Appeal from the 281st District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-27427**

## MEMORANDUM OPINION

In this interlocutory appeal, Nance International, Inc. appeals the trial court's

granting of OceanMaster Engineering PTE, Ltd.'s special appearance. *See* TEX.

CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (West Supp. 2012). In three issues,

Nance contends that the trial court erred by considering a late-filed affidavit in

support of OceanMaster's special appearance and by granting the special appearance because OceanMaster is subject to specific and general jurisdiction in Texas. We reverse and remand.

## Background

Nance is a company in Beaumont, Texas that manufactures and sells marine air conditioning, refrigeration, heating, and ventilation systems. OceanMaster is a Singapore company in the ship-repair and engineering industry. In February 2009, Nance sent OceanMaster a quote for two water chillers via email. The proposal was for $197,800 and specified that the sale of the chillers was "F.O.B. Houston, Texas USA"; OceanMaster was responsible for transportation and other expenses "to and from the equipment site to and from Nance Facilities in Beaumont, TX"; and "[a]ll warranties and services for parts and/or materials are FOB Beaumont, TX." In April, OceanMaster mailed a purchase order for the two water chillers and three other pieces of equipment to Nance. OceanMaster's purchase order also specified "FOB Houston." OceanMaster participated in the manufacturing process by requesting and approving diagrams of interest to it. In addition, the purchase order reflects that OceanMaster availed itself of thirty days of free financing on the chillers.

The chillers ultimately were shipped to Australia to be installed on an offshore rig belonging to another Texas company, Atwood Oceanics, Inc. Later,

2

OceanMaster asserted that the chillers were defective and communicated with Nance in an effort to cure the defects. The parties were unable to resolve the dispute concerning the defects and OceanMaster refused to pay for the chillers.

Nance brought suit for the unpaid balance of $197,800 for the purchase price of the two chillers. OceanMaster filed a special appearance. Three days before the hearing on the special appearance, OceanMaster filed a brief in support of its special appearance that included an affidavit from its vice-president, Lee Win, as well as a motion for leave to file the affidavit. In the motion for leave, OceanMaster asserted that the affidavit contained the same information as the one that had been attached to its special appearance, but the earlier affidavit had not been notarized. The affidavit for which they sought leave to file had been properly notarized. The trial court did not rule on the motion at that time.

At the hearing, Nance's president, David Nance, testified. He stated that since May, 2007, OceanMaster had entered approximately sixty contracts with Nance for the sale of equipment. Mr. Nance stated that OceanMaster accepted the goods in Houston, Texas on each of the contracts and, as best as he could recall, each contract was F.O.B. Houston. During the business relationship, representatives of OceanMaster visited Nance's offices in Beaumont approximately three times, although Mr. Nance could not say whether those visits related to any particular contract. Nance also introduced three exhibits at the

3

hearing: the February 2009 proposal from Nance; the corresponding purchase order from OceanMaster; and a print-out from OceanMaster's website identifying OceanMaster's customers, some of which are in Houston. During the hearing, counsel for both parties made legal arguments concerning the special appearance but no other evidence was introduced.

Two weeks after the hearing, OceanMaster again moved for leave to file Mr. Win's affidavit. Nance opposed the motion, but the trial court granted it. Two days later, the trial court granted OceanMaster's special appearance.

### Personal Jurisdiction

#### A.    Standard of Review

Because the question of personal jurisdiction over a nonresident defendant is one of law, we review a trial court's determination of a special appearance de novo. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007) (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)). Where, as here, the trial court makes findings of fact and conclusions of law in support of its ruling, the appellant may challenge the sufficiency of the evidence to support those findings. *BMC Software*, 83 S.W.3d at 794. If there is more than a scintilla of evidence to support a factual finding, the legal sufficiency challenge fails. *Shell Compañia Argentina de Petroleo, S.A. v. Reef Exploration, Inc.*, 84 S.W.3d 830, 836 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). A finding

4

will be reversed for factual insufficiency only if it is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *Id.*

## B. Pleading requirements and the burden of proof

The plaintiff bears the initial burden of pleading allegations sufficient to bring a non-resident defendant within the terms of the Texas long-arm statute. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010); *Moki Mac*, 221 S.W.3d at 574. "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Kelly*, 301 S.W.3d at 658. If the plaintiff pleads sufficient jurisdictional allegations, the nonresident defendant has the burden of negating all bases of jurisdiction in those allegations. *Id.*; *Moki Mac*, 221 S.W.3d at 574. If the plaintiff does not plead sufficient jurisdictional facts, the defendant meets its burden to negate jurisdiction by proving it is not a Texas resident. *Kelly*, 301 S.W.3d at 658–59.

"The defendant can negate jurisdiction on either a factual or legal basis." *Id.* at 659. Among the ways to negate jurisdiction, "the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; [or,] for specific jurisdiction, that the claims do not arise from the contacts . . . ." *Id.* We consider both the plaintiff's pleadings as well as any

5

response to the defendant's special appearance to determine whether the plaintiff satisfied its burden. *See Wright v. Sage Eng'g, Inc.*, 137 S.W.3d 238, 249 n.7 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

## C.    Substantive law

A Texas court may assert personal jurisdiction over a non-resident defendant if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees. *Moki Mac*, 221 S.W.3d at 574. "Because the Texas long-arm statute reaches 'as far as the federal constitutional requirements of due process will allow,' the statute is satisfied if the exercise of personal jurisdiction comports with federal due process." *PreussagAktiengesellschaft v. Coleman*, 16 S.W.3d 110, 113 (Tex. App.—Houston [1st Dist.] 2000, pet. dism'd w.o.j.) (quoting *CSR, Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996)).

Personal jurisdiction is proper when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Moki Mac*, 221 S.W.3d at 575 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154 (1945)). Minimum contacts are sufficient for personal jurisdiction when the nonresident defendant has purposefully availed himself of the privileges of conducting activities within the forum state, thus invoking the benefits and

6

protections of its laws. *Id.* (citing *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228 (1958)).

A nonresident defendant's forum-state contacts may give rise to two types of personal jurisdiction: specific and general. When specific jurisdiction is alleged, the inquiry focuses on the relationship among the defendant, the forum, and the litigation. *Id*. (citing *Guardian Royal*, 815 S.W.2d at 228). Purposeful availment alone will not support an exercise of specific jurisdiction. *Id.* at 579. Rather, specific jurisdiction has "two co-equal components," and "purposeful availment has no jurisdictional relevance unless the defendant's liability arises from or relates to the forum contacts." *Id.* In *Moki Mac*, the Texas Supreme Court concluded that for a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, "there must be a *substantial connection* between those contacts and the operative facts of the litigation." *Id.* at 585 (emphasis added) (citing *Guardian Royal*, 815 S.W.2d at 229–33; *Rush v. Savchuk*, 444 U.S.320, 329, 100 S. Ct. 571 (1980)). The operative facts of the litigation are those facts that would be the focus of the trial. *Pulmosan Safety Equip. Corp. v. Lamb*, 273 S.W.3d 829, 839 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (citing *Moki Mac*, 221 S.W.3d at 585).

A general jurisdiction inquiry is very different from a specific jurisdiction inquiry. It requires a "more demanding minimum contacts analysis," *PHC–*

*Minden, L.P. v. Kimberly–Clark Corp.*, 235 S.W.3d 163, 168 (Tex. 2007) (quoting *CSR, Ltd.*, 925 S.W.2d at 595), with a "substantially higher" threshold. *Id.* (quoting 4 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1067.5). Usually, "the defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are less extensive than that will not qualify for general in personam jurisdiction." *Id.* General jurisdiction is "dispute-blind," meaning that it is an exercise of the court's jurisdiction made without regard to the nature of the claim presented or whether the defendant's alleged liability arises from those contacts. *Id.* The central question is whether the defendant's contacts are "continuous and systematic" such that the relationship between the nonresident and the state approaches the relationship between the state and its own residents. *Id.* (citing *Hall v. Helicopteros Nacionales de Columbia, S.A.*, 638 S.W.2d 870, 882 (Tex. 1982) (Pope, J., dissenting), *rev'd*, 466 U.S. 408, 104 S. Ct. 1868 (1984)).

**Specific Jurisdiction**

In its second issue, Nance contends that the trial court erred by determining that OceanMaster's formation and partial performance of this contract involving the chillers is insufficient to justify a Texas court's exercise of personal jurisdiction over OceanMaster.

**A. Sufficiency of the Evidence to Support the Trial Court's Jurisdictional Findings of Fact**

Nance challenges portions of the trial court's findings of fact in support of its conclusion that OceanMaster was not subject to jurisdiction in Texas. Nance contends the evidence does not support the following findings:

• OceanMaster has not entered into any contracts with any Texas resident that requires performance in Texas except for sending payments to Texas residents.

• OceanMaster does not manufacture or sell goods in Texas.

• The contract at issue was not related to a personal visit.

**1. Performance in Texas**

Nance contends that the trial court's finding of fact that OceanMaster did not enter any contracts that required performance in Texas is not supported by the evidence. OceanMaster responds that Win's affidavit does support this finding. In his affidavit, Win stated, "OceanMaster has not entered into any contract with any Texas resident that requires OceanMaster to perform in Texas except for the receipt of payment in Texas." Win's personal interpretation of the contract is not evidence of the meaning of the contract. *See Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003) (stating language of contract controls in determining legal meaning of contract; the fact that parties interpret contract differently does not affect contract's meaning). The express terms of the contract contradict Win's affidavit. The purchase order OceanMaster sent to Nance

9

specified that the sale was F.O.B. Houston, Texas and that OceanMaster was responsible for transportation and other expenses "to and from the equipment site to and from Nance Facilities in Beaumont, TX." The contract thus permits only one inference—that OceanMaster undertook performance in Texas beyond the mere act of sending payment to Nance. Accordingly, we may not disregard it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). Because the purchase order requires performance on the part of OceanMaster beyond mere payment in Texas and cannot be disregarded, we conclude that the evidence is legally insufficient to support the trial court's finding of fact that OceanMaster did not enter a contract with any Texas resident that required performance in Texas except for sending payments to Texas residents.

### 2. Manufacture or Sale of Goods in Texas

Nance also contends that the evidence is insufficient to support the finding that OceanMaster does not manufacture or sell goods in Texas. There is no evidence that OceanMaster manufactures goods in Texas; we therefore look only to whether OceanMaster sells goods in Texas. Win's affidavit states that OceanMaster does not sell goods in Texas—it negotiates and performs all contracts for the sales of its goods outside of Texas. Nance introduced contrary evidence, in the form of a printout from OceanMaster's website, which lists Texas companies as clients. But there is no evidence of the terms of any sales. Nance also argues

that the chillers in this case were sold to Atwood Oceanics, a Texas company. But the record shows these chillers were shipped from Nance's facilities in Beaumont to Singapore and then to Atwood's rigs in Australia, and there is no evidence of when Atwood took title to the chillers or any other term of the sale indicating the sale to Atwood required performance by OceanMaster in Texas. Accordingly, we conclude that Win's affidavit is some evidence to support the trial court's finding. We also conclude that, considering all the evidence and giving deference to the fact-finder's role to determine credibility and resolve conflicting facts and inferences, the evidence is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. We therefore hold that the evidence is legally and factually sufficient to support the trial court's finding that OceanMaster does not manufacture or sell goods in Texas. *See City of Keller*, 168 S.W.3d at 827; *Cain*, 709 S.W.2d at 176.

### 3. Personal Visit to Texas

Finally, Nance contends that the evidence does not support the trial court's finding that the contract at issue was not related to a personal visit to Texas from OceanMaster personnel. Nance did not plead as a jurisdictional fact that OceanMaster visited Texas to negotiate the contract at issue. OceanMaster, therefore, was not required to negate it. *See Kelly*, 301 S.W.3d at 658. Rather, it was up to Nance to prove the visits did occur and were for the purpose of

11

negotiating the contract. But Nance did not put on such evidence. Mr. Nance testified:

> [OceanMaster's Counsel]  Do you know the number of times OceanMaster or any representative of OceanMaster has—
>
> [Mr. Nance]  I believe it's been three and—three to Beaumont, Texas, at our headquarters.
>
> [OceanMaster's Counsel] So OceanMaster has visited Nance three times in the course of the entire period that you testified to earlier, from '07 to present?
>
> [Mr. Nance]  I don't know.  I can't recall exact dates, no.
>
> [OceanMaster's Counsel] Were those three times related to contracts that were—contracts between OceanMaster and Nance?
>
> [Mr. Nance]  I can't—I don't know. I can't say that.

This evidence is not so strong or conclusive that it compelled a reasonable fact-finder to find that OceanMaster visited Texas about this particular contract. Nor is this evidence so strong that the trial court's contrary finding is against the overwhelming weight of the evidence or manifestly unjust. We therefore conclude that the evidence is legally and factually sufficient to support the finding that the contract at issue was not related to a personal visit.

## B.     De Novo Review of Trial Court's Jurisdictional Conclusions of Law

The trial court's grant of OceanMaster's special appearance was based on the following conclusions of law:

> Entering into a contract with a Texas resident is insufficient to establish specific jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478–82 (1985); *Olympia Capital Associates, L.P. v. Jackson*, 247 S.W.3d 399, 417 (Tex. App.—Dallas 2008, no pet).
>
> Agreeing to pay for goods to be manufactured in Texas is insufficient to establish specific jurisdiction. *Blair Communications, Inc.* [*v. SES Survey Equipment Services, Inc.*], 80 S.W.3d [723,] 730 [(Tex. App.—Houston [1st Dist.] 2002, no pet.)].

And in defending the trial court's ruling OceanMaster relies on *Burger King*, *Olympia*, and similar cases that stand for the proposition that a single contract is insufficient to establish jurisdiction.

It is true that "merely contracting" with a Texas resident is not enough to confer jurisdiction over a nonresident defendant. *Olympia*, 247 S.W.3d at 417; *see also Burger King Corp.*, 471 U.S. at 478, 105 S. Ct. at 2185 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." (emphasis in original)).  Similarly, in *Blair* this court stated, "Merely contracting with a Texas resident does not satisfy the minimum contacts requirement.  Nor is jurisdiction justified by the single fact that a contract is payable in Texas." *Blair Commc'ns, Inc.*, 80 S.W.3d at 729.  The "existence of a contract . . . and engaging in communications related to the execution and performance of that contract are insufficient to establish minimum contacts . . . ." *Olympia Capital Assocs.*, 247 S.W.3d at 418.

13

However, in *Burger King* the Supreme Court cautioned courts to take a "'highly realistic' approach" when looking at a contract and whether it establishes minimum contacts. *Burger King Corp.*, 471 U.S. at 479, 105 S. Ct. at 2185. Factors to consider include "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.*, 105 S. Ct. at 2185. The Fourteenth Court of Appeals identified the following factors to consider in special appearance cases involving a contract:

> (1) the state in which the agreement was solicited (and by whom), negotiated, consummated, and performed; (2) whether, after entering into the agreement, the nonresident directed communications to Texas in furtherance of the transaction(s); (3) whether the nonresident earned a profit in Texas from the transaction(s); (4) whether the nonresident paid the cost to ship the goods from Texas; (5) whether the nonresident placed follow-up orders; (6) whether Texas law governed the transactions; and (7) whether payments were sent or to be sent to Texas.

*P.V.F., Inc. v. Pro Metals, Inc.*, 60 S.W.3d 320, 325 n.10 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (citations omitted); *see also Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1268–69 (11th Cir.), *cert. denied*, 131 S. Ct. 158 (2010) (noting that single contract by nonresident defendant to purchase from resident plaintiff not enough to confer jurisdiction absent some additional factor such as participating in manufacturing process, establishing relationship by placing multiple orders, or negotiating the contract via telefaxes or calls with plaintiff).

14

Applying these factors reveals key facts in this case that are absent from the cases on which OceanMaster relies. Here, OceanMaster was required to do more than simply pay Nance in Texas. The purchase order OceanMaster sent to Nance provided that the sale was F.O.B. Houston, Texas[1] and that OceanMaster was responsible for transportation and other expenses "to and from the equipment site to and from Nance Facilities in Beaumont, TX." Thus, unlike the cases cited by OceanMaster, the contract in this case required some performance by the defendant in Texas beyond mere payment. *See Morris Indus., Inc. v. Trident Steel Corp.*, No. 01-11-00380-CV, 2011 WL 6015699, at *5 (Tex. App.—Houston [1st Dist.] Dec. 1, 2011, no pet.) (finding purposeful availment when, among other acts, seller shipped goods to Houston, then paid and arranged for goods to be offloaded and trucked to buyer's Houston facilities, and seller maintained title and risk of loss until delivery complete); *cf. Blair Commc'ns, Inc.*, 80 S.W.3d at 730 (finding no performance in Texas where purpose of contract "was to obtain equipment, which

---

[1] OceanMaster also argues that the F.O.B. term alone is insufficient to confer jurisdiction. *See Sun-X Int'l Co. v. Witt*, 413 S.W.2d 761, 768 (Tex. Civ. App.—Texarkana 1967, writ ref'd n.r.e.) (stating "the mere fact that the goods were shipped by appellant to appellee F.O.B. Houston pursuant to the contractual provision that 'all sales to be F.O.B. point of shipment'" insufficient to support jurisdiction). We note, however, that an F.O.B. term is a relevant factor to consider in a minimum contacts analysis. *See Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 471 n.10 (5th Cir.), cert. denied, 126 S. Ct. 2968 (2006); *S. Copper, Inc. v. Specialloy, Inc.*, 245 F.3d 791 (5th Cir. 2000).

was located in England, for use on a seismic survey, which was being conducted in New York").

Additionally, in the course of communicating with Nance after the contract was formed, OceanMaster participated in the manufacturing process by requesting, reviewing and approving plans. *See Sw. Offset, Inc. v. Hudco Publ'g Co.*, 622 F.2d 149, 150–52 (5th Cir. 1980) (per curiam) (finding minimum contacts where defendant sent multiple purchase orders to plaintiff after initial solicitation and sent camera-ready copies of its telephone directories and corrected proofs to publisher in forum).

OceanMaster's performance in Texas is not the only factor distinguishing this case from those upon which OceanMaster relies. In *Olympia*, the parties "structured their business arrangements to avoid doing business in Texas," by providing that performance would occur in New York or Bermuda, not in Texas. *Olympia*, 247 S.W.3d at 417–18. Here, the parties did not specify that some other law than Texas law would apply. In *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, a case cited and discussed by OceanMaster and relied upon by the court in *Olympia*, the Fifth Circuit found no minimum contacts from a company that, like OceanMaster here, purchased equipment from a Texas company. 700 F.2d 1026, 1029 (5th Cir. 1983). In finding no minimum contacts, the court emphasized that the transaction was initiated by the Texas company, the agreement expressly

provided it was to be governed by and construed according to Alaska law, and the equipment was delivered to the Alaska company in Seattle, Washington. *Id.* Unlike *Hydrokinetics*, the record in this case does not reveal which party initiated the transaction, nor does the contract specify the governing law, but it does specifically call for OceanMaster to take title and possession of the chillers in Texas.

This case more closely resembles *P.V.F., Inc.* and *Diamond Crystal*. In *P.V.F., Inc.*, the Texas plaintiff, Pro Metals, Inc., sued over two unpaid invoices for pipes and pipe fittings, including components manufactured in Texas. *P.V.F.*, 60 S.W.3d at 323. P.V.F. contended that the two contracts were isolated contacts with Texas and therefore could not provide a basis for specific jurisdiction. *P.V.F.*, 60 S.W.3d at 325. The Fourteenth Court, however, noted that "where, as here, a nonresident defendant has conducted numerous transactions in another state, limiting the determination of whether the defendant purposefully availed itself of the privilege of doing business in that state to only the transaction(s) the defendant is alleged to have breached there would render the determination meaningless." *Id.* at 326. P.V.F. had issued thirty separate purchase orders over the course of a couple of years, although the record did not establish which party had initiated contact. *Id.* at 327. The goods were for resale to others and were shipped F.O.B. Houston. *Id.* at 323, 327. In connection with the sale, P.V.F. had submitted a

17

credit application for the purchase of the goods. *Id.* at 327. The court concluded that, under those facts, P.V.F. had purposefully availed itself of the privilege of conducting business in Texas and was subject to specific jurisdiction. *Id.* at 326–27 (noting entire sequence of transactions that P.V.F. entered into with Pro Metals must be considered in determining whether P.VF. purposefully directed activities to Texas for purposes of specific jurisdiction).

In *Diamond Crystal*, Food Movers, a California company, ordered multiple shipments of sweetener from Diamond Crystal, a Delaware company with a facility in Savannah, Georgia. *Diamond Crystal Brands, Inc.*, 593 F.3d at 1254. Diamond Crystal sued Food Movers for two unpaid invoices. *Id.* at 1255. The court found significant that delivery was F.O.B. Diamond Crystal's Savannah, Georgia loading dock and Food Movers specified delivery was for customer pickup. *Id.* at 1272. The court, acknowledging that an F.O.B. delivery term "does not necessarily create minimum contacts," explained that Food Movers specified delivery by customer pickup for its own purposes and benefits, meaning Food Movers saved shipping costs and derived an economic benefit from the structure of the transaction. *Id.* at 1272–73. Here, the record demonstrates that OceanMaster, like the defendants in *P.V.F.* and *Diamond Crystal*, had entered into dozens of contracts with Nance and that OceanMaster took delivery of the chillers at issue in

18

this case in Houston, Texas, on credit, later selling them to Atwood, another Texas company.

In summary, OceanMaster argues that: a contract alone is not sufficient for jurisdiction, *see Blair Commc'ns, Inc.*, 80 S.W.3d at 730; communication concerning performance of the contract alone is not sufficient, *see Olympia Capital Assocs.*, 247 S.W.3d at 418; payment to a Texas seller alone is not sufficient, *see Blair Commc'ns, Inc.*, 80 S.W.3d at 730; and an F.O.B. term alone is not sufficient, *see Sun-X Int'l Co.*, 413 S.W.2d at 768. But, in this case, none of these factors exist *alone*; all four are present. And although OceanMaster did not submit a free-standing credit application, as in *P.V.F.*, the purchase order indicates that OceanMaster availed itself of thirty days of free financing from Nance. *See P.V.F.*, 60 S.W.3d at 327. Because OceanMaster contracted with a Texas seller with whom it had an established course of conduct, agreed to accept delivery of (and thus bore the risk of loss for) the chillers in Texas, accepted favorable credit terms offered to it by the seller, agreed to send payment into Texas, and participated in the manufacturing process, we conclude that OceanMaster purposefully availed itself of the privilege of doing business in Texas such that it is

subject to specific jurisdiction in this case. *See id.* at 327; *Diamond Crystal Brands, Inc.*, 593 F.3d at 1254.[2]

## Fair play and substantial justice

Because OceanMaster's Texas contacts support specific jurisdiction, we must also determine whether jurisdiction is consistent with traditional notions of fair play and substantial justice. *Guardian Royal*, 815 S.W.2d at 231. "Only in rare cases, however, will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id.* (citing *Burger King*, 471 U.S. at 477–78, 105 S. Ct. at 2185). In making this determination, we must consider OceanMaster's contacts in light of: (1) "the burden on the defendant"; (2) "the

---

[2]     The fact that we overruled Nance's challenges to two findings of fact does not change our conclusion. Whether OceanMaster manufactures or sells goods in Texas to companies other than Nance is not relevant to specific jurisdiction in this case, which concerns whether OceanMaster's *purchase* of equipment *from Nance* gives rise to minimum contacts in Texas. *See PHC–Minden*, 235 S.W.3d at 168 (noting that general jurisdiction required "longstanding business in the forum state, such as marketing or shipping products"). Similarly, whether OceanMaster visited Texas to negotiate this specific purchase is not outcome-determinative. *See Burger King*, 471 U.S. at 476, 105 S. Ct. at 2184 (stating that, if defendant purposefully availed itself of doing business, jurisdiction "may not be avoided merely because the defendant did not *physically* enter the forum State"); *see also Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 339 (Tex. 2009) (citing *Burger King* for that same proposition). We have taken a "highly realistic" approach to the contract at issue in this case, *see Burger King Corp.*, 471 U.S. at 479, 105 S. Ct. at 2185, and, despite OceanMaster's lack of sales to Texas clients and its lack of physical presence in Texas, we conclude that OceanMaster has sufficient minimum contacts with Texas to support the exercise of specific jurisdiction in this case. *See P.V.F.*, 60 S.W.3d at 327; *Diamond Crystal Brands, Inc.*, 593 F.3d at 1254.

20

interests of the forum state in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; (4) the interstate or international judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several nations or states in furthering fundamental substantive social policies. *Id.* at 231. To defeat jurisdiction on this basis, OceanMaster must present "'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King*, 471 U.S. at 477, 105 S. Ct. at 2185).

OceanMaster contends that the burden of defending this suit in Texas would be "unreasonably high" because it is a Singapore company and "has no employees, servants, agents, or assets within Texas." However, "distance alone [is not] ordinarily sufficient to defeat jurisdiction." *Id.* With respect to the second factor, OceanMaster states that "Texas has little interest in adjudicating this dispute . . . [because] the claims against OceanMaster in this case do not arise from substantive contacts with Texas, nor are its contacts with Texas systematic and continuous such that adjudication in Texas would be proper." However, we have concluded that OceanMaster does have sufficient contacts with Texas to subject it to jurisdiction in a Texas court.

Concerning the third, fourth, and fifth factors, OceanMaster contends that all the witnesses relevant to its defense that the chillers were defective reside outside

21

of Texas and that the repairs took place in Singapore and Australia. However, Nance's witnesses and evidence exist in Texas. Thus, although a suit in Texas may be a burden on OceanMaster, there is no evidence to indicate that Nance would not face a similar burden in a suit in Singapore. *See Paul Gillrie Inst., Inc. v. Universal Computer Consulting, Ltd.*, 183 S.W.3d 755, 764 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (noting that "there is no legal requirement that this hardship must be borne instead by the plaintiff whenever the defendant is not found in the state of the plaintiff's residence") (quoting *Wright*, 137 S.W.3d at 253–54). We also note that a Texas plaintiff has an interest in presenting claims for its damages in a Texas court and Texas has an interest in providing its citizens with a forum. *See id.* Finally, there is nothing in this record to indicate that maintaining jurisdiction in Texas thwarts either an international interest in obtaining the most efficient resolution of controversies or a fundamental substantive social policy of Singapore. In fact, in support of its motion to dismiss for forum non conveniens, OceanMaster asserts that a similar breach of contract action is available in Singapore, indicating that social policies concerning the enforcement of contracts are similar in Singapore and Texas. OceanMaster has not met its burden to present a compelling case that, despite the presence of minimum contacts, this is one of the rare cases in which a Texas court's exercise of jurisdiction would offend due process.

## Conclusion

We conclude that OceanMaster is subject to specific jurisdiction.[3]   We reverse the order of the trial court and remand this cause.


Rebeca Huddle
Justice

Panel consists of Justices Jennings, Massengale, and Huddle.

---

[3]   Because of this conclusion, we do not address Nance's remaining issues concerning the existence of general jurisdiction or the admission of Mr. Win's affidavit, which are not necessary to the resolution of this appeal. *See* TEX. R. APP. P. 47.1.