**Affirmed and Memorandum Opinion filed June 25, 2019.**



**In the**

# Fourteenth Court of Appeals

## NO. 14-18-00420-CV

**NAPOLI, BERN, RIPKA, SHKOLNIK & ASSOCIATES, LLP; NAPOLI, BERN, RIPKA, SHKOLNIK, LLP; AND NAPOLI SHKOLNIK PLLC, Appellants**

**v.**

**STRATOS LEGAL SERVICES, LP, Appellee**

**On Appeal from the 133rd District Court
Harris County, Texas
Trial Court Cause No. 2017-79380**

## MEMORANDUM OPINION

This is an interlocutory appeal from an order denying a special appearance made by nonresident entities Napoli, Bern, Ripka, Shkolnik & Associates, LLP; Napoli, Bern, Ripka, Shkolnik, LLP; and Napoli Shkolnik PLLC (together, the "Napoli appellants") in a suit based on over 100 unpaid invoices for reporting and other litigation-support services provided by Texas entity Stratos Legal Services, LP. *See* Tex. R. Civ. P. 120a; Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7).

Because we conclude that the Napoli appellants' Texas contacts are sufficient to establish specific jurisdiction over them and that exercising jurisdiction comports with fair play and substantial justice, we affirm.

## I. BACKGROUND

The Napoli appellants are New York entities, with principal executive offices in Melville, New York. Stratos, a Texas entity based in Houston, is a full-service litigation-support firm. From February 2015 through May 2016, Stratos was hired by and provided various services, including recording and transcribing depositions, to the Napoli appellants. The depositions related to the Napoli appellants' asbestos cases. The depositions were taken in various states, including Alaska, Arizona, California, Connecticut, Florida, Illinois, Indiana, Iowa, Maryland, Michigan, Minnesota, Mississippi, Missouri, New Jersey, North Carolina, Ohio, and Wisconsin. The invoices for Stratos's services amounted to just under $53,000. The Napoli appellants did not pay Stratos.

In 2017, Stratos brought claims against the Napoli appellants for breach of contract, unjust enrichment, and "money had and received," which is a form of unjust enrichment.[1] The Napoli appellants filed a special appearance in February 2018, attaching: entity information for each of the Napoli appellants from the New York Department of State Division of Corporations; an affidavit from Paul Maslo, a partner at Napoli Shkolnik PLLC; and a declaration from Patrick Haines, another partner at Napoli Shkolnik PLLC. The Napoli appellants did not include a verification as required by Texas Rule of Civil Procedure 120a.

Stratos amended its petition, adding claims for promissory estoppel and under

---

[1] *See London v. London*, 192 S.W.3d 6, 13 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

2

section 52.059 of the Government Code, which provides that an attorney taking a deposition and his law firm are jointly and severally liable to the court reporter for charges. *See* Tex. Gov't Code Ann. § 52.059. To its amended petition, Stratos attached: the declaration from Haines; information regarding Haines captured from the State Bar of Texas website; information regarding locations and offices captured from the Napoli Shkolnik PLLC website; information regarding the Austin office captured from the Napoli Shkolnik PLLC website; Haines's attorney biography captured from the Napoli Shkolnik PLLC website; the invoices issued by Stratos to the Napoli appellants; and the statements of overdue invoices issued by Stratos to the Napoli appellants' accounts-payable departments.

The Napoli appellants filed another special appearance. The Napoli appellants attached the same exhibits as before, except in place of Haines's original declaration, they included another declaration by Haines. Again, they did not include a verification.

Stratos responded, attaching: an affidavit from Christin Chandler, the president of Stratos; screenshots from text-message exchanges between Haines and Chandler dated May and October 2015; and the overdue invoices and statements issued by Stratos to the Napoli appellants. Stratos pointed out that the Napoli appellants' special appearance was defective because it lacked a verification and the accompanying affidavits did not address all the factual allegations in the special appearance.

The Napoli appellants filed an amended special appearance, this time including a verification. They did not attach any exhibits to their amended special appearance. The trial court held a hearing; no evidence was admitted at the hearing. On May 1, 2018, the trial court signed an order denying the Napoli appellants' special appearance. They appeal.

## II.  ANALYSIS

Stratos alleged that the trial court has both general and specific personal jurisdiction over the Napoli appellants. In pertinent part, Stratos alleged the following with regard to personal jurisdiction:

- the Napoli appellants are law firms engaging in civil litigation in Texas;

- the Napoli appellants specifically communicated with Stratos as a Texas entity for the purpose of obtaining products and services;

- the Napoli appellants induced Stratos to enter into agreements for Stratos to provide them with products and services;

- Stratos is a full-service litigation support firm based in Houston, Texas;

- in the ordinary course of business, a law firm's authorized representative will contact Stratos directly to order services;

- Texas attorney Patrick Haines repeatedly contacted Stratos and requested that Stratos provide services in connection with a multitude of lawsuits involving asbestos-related claims;

- Stratos's claims relate to legal-support services that were requested by or on behalf of Haines;

- Haines is a partner at Napoli Shkolnik PLLC and is the partner in charge of the firm's asbestos litigation group;

- for at least the last five years, Haines has handled thousands of asbestos-related cases for the Napoli appellants, including the cases for which Stratos performed legal services at issue in this action;

- Haines was licensed to practice law in Texas in 1992, associated with Napoli Shkolnik PLLC, with a "primary practice location" in Houston, Texas;

- Haines's office address is 3001 Esperanza Crossing #1063, Austin, TX 78758;

- Haines has entered appearances in Texas courts on behalf of Napoli Bern Ripka Shkolnik LLP;

4

- Napoli Shkolnik PLLC maintains a public website, which states it is a national litigation firm with an office in Austin, Texas, and has a specific webpage devoted to its Texas office;

- Napoli Shkolnik PLLC expressly represents that it maintains "experienced and professional attorneys in Austin, Texas" that "are ready to serve you" and that "Texas attorneys are standing by, waiting to assist you with a plethora of legal needs you may have";

- Haines is identified as the "managing attorney" of the Texas office, who "has successfully tried cases to verdict in Texas";

- Haines has resided continuously in Texas since 2014, and is or was a partner and/or member of each of the Napoli appellants during the same time period;

- each of the Napoli appellants is a citizen of Texas for purposes of personal jurisdiction because the jurisdictional citizenship of a limited partnership and/or a limited liability company is determined by reference to its partners or members;

- Haines had actual or apparent authority to represent the Napoli appellants in connection with the transactions at issue, which arose as a result of communications to Stratos initiated by Haines or his agents;

- Stratos believed that it was doing business and entering into agreements with a Texas resident;

- the Napoli appellants have specifically availed themselves of the jurisdiction of Texas courts by maintaining continuous operations in Texas, conducting ongoing business in the Austin office, directing marketing/solicitation communications to Texas residents, appearing in Texas courts, and employing Texas-licensed attorneys to practice law in Texas;

- all or a substantial part of the events or omissions giving rise to Stratos's claims occurred in Harris County; and

- the Napoli appellants and Stratos entered into oral and written agreements and the Napoli appellants breached those agreements causing Stratos to sustain damages.

The trial court denied the Napoli appellants' special appearance without

specifying which type of jurisdiction it found. In three issues, the Napoli appellants contend that their Texas contacts were insufficient to justify either general or specific jurisdiction.

## A. Applicable law and standard of review

Whether a trial court has personal jurisdiction over a defendant is a question of law that we review de novo, but the trial court frequently must resolve questions of fact in order to decide the issue. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). When, as here, a trial court does not issue findings of fact and conclusions of law with its ruling on a special appearance, all findings necessary to support the ruling and supported by the evidence are implied, although the sufficiency of the record evidence to support those findings may be challenged on appeal. *Id.* at 795.

The broad "doing business" language in the Texas long-arm statute allows the exercise of personal jurisdiction to "reach[] as far as the federal constitutional requirements of due process will permit." *U-Anchor Advert., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977) (interpreting former Revised Statutes art. 2031b, Act of Mar. 18, 1959, 56th Leg., R.S., ch. 43, § 4, 1959 Tex. Gen. Laws 85, 85–86 (amended 1979) (current version at Tex. Civ. Prac. & Rem. Code § 17.042)). Due process is satisfied when the nonresident defendant has established minimum contacts with the forum state and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

A nonresident defendant's minimum contacts can create either general or specific jurisdiction. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016). Minimum contacts exist when the nonresident defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits

and protections of its laws. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). There are three components to the "purposeful availment" inquiry. *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 67 (Tex. 2016). First, the relevant contacts are those of the defendant, not the unilateral activity of another party or a third person. *Id.* Second, the contacts must be purposeful rather than random, fortuitous, isolated, or attenuated. *Id.* Third, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Id.*

General jurisdiction is party focused. A trial court has general jurisdiction over a nonresident defendant when the defendant's contacts with the forum state are so continuous and systematic that the defendant is essentially at home in the state. *TV Azteca*, 490 S.W.3d at 37. When a nonresident defendant is subject to general jurisdiction, the trial court may exercise jurisdiction over the defendant even if the plaintiff's cause of action does not arise from or relate to the defendant's contacts with the forum. *Id.* This test requires substantial activities within the forum and is more demanding than the test for specific jurisdiction. *Id.* The paradigm forum for the exercise of general jurisdiction over a corporation is a place in which it is fairly regarded as at home, such as the place of incorporation and principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

Specific jurisdiction is transaction focused. A trial court has specific jurisdiction over a nonresident defendant when (1) the defendant's contacts with the forum state are purposeful and (2) the cause of action arises from or relates to those contacts. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). When a nonresident defendant is subject to specific jurisdiction, the trial court may exercise jurisdiction over the defendant even if the defendant's forum contacts are isolated or sporadic. *TV Azteca*, 490 S.W.3d at 37. In conducting a specific-jurisdiction analysis, we focus on the relationship among the defendant, the forum,

and the litigation. *Kelly*, 301 S.W.3d at 658. Generally, a specific-jurisdiction analysis should be performed on a claim-by-claim basis. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013). When separate claims are based on the same forum contacts, however, a separate analysis of each claim is not required. *Id.* at 150–51. Here, Stratos bases all its claims on the same purported contacts with Texas.

In a special appearance, the plaintiff and the defendant bear shifting burdens of proof. *Kelly*, 301 S.W.3d at 658. The plaintiff bears the initial burden of pleading sufficient facts to bring a nonresident defendant within the reach of the Texas long-arm statute. *Id.*; *see* Tex. Civ. Prac. & Rem. Code Ann. § 17.042. If the plaintiff meets its initial burden, the burden then shifts to the defendant to negate all bases of personal jurisdiction alleged by the plaintiff. *Kelly*, 301 S.W.3d at 658. "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Id.* A defendant can negate jurisdiction on either a factual or a legal basis. *Id.* at 659. "Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations." *Id.* Or the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction. *Id.* If the defendant meets its burden of negating all alleged bases of personal jurisdiction, then the plaintiff must respond with evidence "establishing the requisite link with Texas." *See id.* at 660.

Once the court concludes that the defendant has sufficient minimum contacts with the state to establish personal jurisdiction, the defendant bears the burden of establishing that the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991).

To determine whether the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice, the court considers: (1) the burden on the defendant; (2) the interests in the forum state in adjudicating the dispute; (3) the plaintiff's interests in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985); *Guardian Royal*, 815 S.W.2d at 231. Only in rare cases will the exercise of personal jurisdiction not comport with fair play and substantial justice when a nonresident defendant has purposefully availed itself of the privilege of conducting business within a forum. *Guardian Royal*, 815 S.W.2d at 231.

## B. The Napoli appellants' exhibits

At the hearing, Stratos objected that the Napoli appellants' amended special appearance "did not include any exhibits that had been attached to the prior version" and did not "actually provide any evidence to the court from which it can make any findings of fact to determine a special appearance should be granted." The Napoli appellants responded that case law "allowed [them] to amend a special appearance or to add a verification" and that their filed affidavits were "good affidavits." On appeal, Stratos argues that the denial of the Napoli appellants' special appearance should be affirmed because they filed "an Amended Special Appearance without any evidence in support."[2]

---

[2] In addition, as it did below, Stratos argues that the Napoli appellants' special appearance should be denied because they filed an unsworn special appearance and the affidavits from Maslo and Haines did not swear to the veracity of the special appearance itself or address all the factual allegations therein. We disagree. An unverified special appearance does not waive or concede jurisdiction; under rule 120a, a party is able to cure an unverified special appearance by filing an amendment that adds a verification (even after the ruling) as long as the amendment is filed before there is a general appearance. Tex. R. Civ. P. 120a; *Dawson-Austin v. Austin*, 968 S.W.2d 319,

9

Rule 120a provides that the trial court "shall determine the special appearance on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony." Tex. R. Civ. P. 120a(3). Rule 120a also provides that "affidavits, if any, shall be served at least seven days before the hearing, shall be made on personal knowledge, shall set forth specific facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify." *Id.* Rule 120a does not, however, contain any language that the trial court shall not consider affidavits and attachments filed in conjunction with a prior special appearance that was unverified. The Napoli appellants filed all their exhibits, including affidavits, more than seven days before the hearing. *See id.*

Stratos did not object that such exhibits were otherwise defective or inadmissible. To the contrary, Stratos attached Haines's original declaration as an exhibit to its own first amended petition. At multiple points during the hearing,

---

322 (Tex. 1998); *see Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 307–08 (Tex. 2004) (per curiam) (even assuming verification and affidavit were defective, "there was more in the record for the trial court's consideration at the time of the special appearance," such as pleadings and deposition of defendant's corporate representative).

Here, prior to the hearing, the Napoli appellants filed an amended special appearance with a verification from Haines attesting that the factual statements contained in the amended special appearance were true and correct under penalty of perjury. In *Casino Magic Corp. v. King*, 43 S.W.3d 14, 18 & n.4 (Tex. App.—Dallas 2001, pet. denied), and *Prosperous Maritime Corp. v. Farwah*, 189 S.W.3d 389, 392–93 (Tex. App.—Beaumont 2006, no pet.), cases cited by Stratos, the defendants did not amend their special appearances to add a verification. Stratos did not challenge the Napoli appellants' verification as defective. Nor did Stratos contend that the Napoli appellants waived their special appearance or violated rule 120a's due-order-of-hearing requirement by seeking affirmative relief on any other motion inconsistent with a special appearance before obtaining a ruling on their special appearance. *Compare Nationwide Distrib. Servs., Inc. v. Jones*, 496 S.W.3d 221, 228 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (waiver when defendants elected to have motion to compel heard before special appearance), *with Wakefield v. British Med. Journal Publ'g Group, Ltd.*, 449 S.W.3d 172, 182–83 (Tex. App.—Austin 2014, no pet.) (no waiver when defendants did not specifically seek to have anti-SLAPP motion to dismiss heard before special appearance).

10

counsel for Stratos expressly referred to and relied on certain facts contained in Haines's declarations. Nor did the trial court rule that the Napoli appellants' previously filed exhibits were defective or inadmissible, or strike any of the exhibits. Instead, the trial court itself expressly referenced Haines's declarations. *See In re D.J.L.*, No. 14-16-00342-CV, 2016 WL 6108341, at *3 (Tex. App.—Houston [14th Dist.] Oct. 18, 2016, no pet.) (mem. op.).

Finally, Stratos's argument that, under rule 65, the Napoli appellants' amended special appearance supplanted the prior version, including all the attachments, does not apply. Rule 65, contained within section 4 of the Rules of Civil Procedure entitled, "Pleading," provides that substituted instruments "shall no longer be part of the pleading in the record of the case." Tex. R. Civ. P. 65. "Pleadings" consist of statements of the plaintiff's cause of action or the defendant's grounds of defense and "shall . . . be by petition and answer." *Id.* 45(a–b). In contrast, a special appearance is made—without regard to the merits of a case—to object to the court's jurisdiction "over the person or property of the defendant on the ground that such party or property is not amenable to process." *Id.* 120a. In other words, a special appearance provides a means to avoid being subjected to or having to file a pleading. Moreover, the case on which Stratos relies, *Armstrong v. Rice*, 556 S.W.2d 620, 622 (Tex. App.—Texarkana 1977, writ dism'd), applied rule 65 in the context of a summary judgment under rule 166a, not a special appearance under rule 120a. Nor have we located any authority that applies rule 65 to a special appearance under rule 120a. Regardless, the trial court considered the exhibits, and Stratos did not object and receive an adverse ruling. *See* Tex. R. App. P. 33.1(a).

Therefore, we will consider the Napoli appellants' exhibits.

Stratos further argues that this court should disregard Haines's declarations because they are demonstrably false and amount to mere equivocation. We decline

11

to do so. First, contrary to Stratos's contention, in his declarations, Haines did not merely verify the facts therein as "true and correct to the best of his knowledge." Rather, in both declarations, Haines attested that he "declare[d] under penalty of perjury that the foregoing is true and correct." *See Tex. Dep't of Pub. Safety v. Caruana*, 363 S.W.3d 558, 564 (Tex. 2012) ("The verity of a declaration is thus assured by the criminal penalties for perjury . . . ."). Next, Stratos contends that Haines's statement that none of his several thousand asbestos cases was filed in Texas is demonstrably false and this court should take judicial notice of this fact based on two cases allegedly filed in Texas where Haines has entered his appearance. However, Stratos has not provided us with proof of these records. *See Freedom Commc'ns, Inc. v. Coronado*, 372 S.W.3d 621, 623 (Tex. 2012) (per curiam) ("[A] court will take judicial notice of another court's records if a party provides proof of the records."). Finally, Stratos argues we should disregard Haines's declarations because the Napoli appellants in their amended special appearance cited to his declarations using terms such as "to the best of [the Napoli appellants'] knowledge," "[the Napoli appellants] do not believe," and "it appears." But, again, the Napoli appellants do not point us to any equivocating language contained in the declarations themselves.

We will consider Haines's declarations in our analysis.

## C. Specific personal jurisdiction

The Napoli appellants present three issues: (1) whether the trial court may exercise general personal jurisdiction over them, (2) whether the trial court may exercise specific personal jurisdiction over them, and (3) whether Government Code section 52.059 confers specific jurisdiction over them.

To begin, the Napoli appellants argue "[t]he trial court's decision ignored the applicable legal standards and was instead based on the fact that Patrick Haines, a

12

Partner at Napoli Shkolnik, resides in Texas." The Napoli appellants cite this exchange during the special-appearance hearing:

> THE COURT: You know, we all know that George H.W. Bush and Barbara Bush had a vacant lot for a long time here and claimed this is their resident [sic] so they could vote here while they were traveling around to—what did Ms. Bush say? They moved 19 times. He had trouble keeping a job. But their residence was in Texas. Even when they didn't have a house here, they had a lot intending to build a house.
>
> [COUNSEL FOR STRATOS]: He gets to escape every summer to Maine.
>
> THE COURT: That's right.
>
> So you know, Mr. Haines says, "My address is 3001 Esperanza Crossing, number 1063, Austin, Texas. I declare under penalty of perjury that the foregoing is true and correct," and he signed it.
>
> So I'm going to deny your motion.

The Napoli appellants do not provide any further explanation or authority for their position. *See* Tex. R. App. P. 38.1(i). In any event, the trial court's written order, which did not specify any reason for denying the Napoli appellants' special appearance, controls over any statement made by the trial court at the hearing. *See Gonzales v. Thorndale Coop. Gin & Grain*, —S.W.3d—, 2019 WL 2063120, at *2 (Tex. App.—Houston [14th Dist.] May 9, 2019, no pet. h.).

Because we must affirm the trial court's special-appearance ruling on any legal theory supported by the evidence, *Cartlidge v. Hernandez*, 9 S.W.3d 341, 345 (Tex. App.—Houston [14th Dist.], no pet.), we focus our analysis on and conclude that the trial court properly could have denied the Napoli appellants' special appearance based on the existence of specific jurisdiction.

According to Stratos, as it argued below, the trial court properly could exercise specific jurisdiction over the Napoli appellants according to this multi-factor test used to determine whether a Texas court has personal jurisdiction over a nonresident

13

buyer of products or services pursuant to a contract:

> (1) the state in which the agreement was solicited (and by whom), negotiated, consummated, and performed;
>
> (2) whether, after entering into the agreement, the nonresident directed communications to Texas in furtherance of the transaction(s);
>
> (3) whether the nonresident earned a profit in Texas from the transaction(s);
>
> (4) whether the nonresident paid the cost to ship the goods from Texas;
>
> (5) whether the nonresident placed follow-up orders;
>
> (6) whether Texas law governed the transactions; and
>
> (7) whether payments were sent or to be sent to Texas.

*P.V.F., Inc. v. Pro Metals, Inc.*, 60 S.W.3d 320, 325 & n.10 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (op. on reh'g); *see Nance Int'l, Inc. v. OceanMaster Eng'g PTE, Ltd.*, No. 01–11–00664–CV, 2012 WL 5381224, at *6 (Tex. App.—Houston [1st Dist.] Nov. 1, 2012, no pet.) (mem. op.) (applying factors from *P.V.F.*).

The Napoli appellants dispute the applicability of such test.[3] Such a multi-factor test, however, is entirely consistent with the jurisdictional jurisprudence of the United States Supreme Court. When the litigation concerns a contract between the parties, the mere fact the parties entered that contract does not automatically establish sufficient minimum contacts in the other party's home forum. *See Burger King*, 471 U.S. at 478; *Michiana*, 168 S.W.3d at 786. Instead, whether and to what extent a contract constitutes a defendant's purposeful "contact" with the forum state

---

[3] The Napoli appellants did not expressly address these factors in their reply to Stratos's opposition to the special appearance or in their opening brief. As they did below, the Napoli appellants instead argue that they merely contracted with, merely communicated with, and merely did (not) send payments to a Texas entity. However, the cases on which they rely do not persuade us based on the facts as presented in this case. This particular situation did not concern a passive, one-time transaction, was not expressly to be governed by foreign law, and was not one where all material performance occurred outside Texas.

must be considered pursuant to multiple factors that reflect a "highly realistic" approach. *Burger King*, 471 U.S. at 478–79 (parties' negotiations and contemplated future consequences, along with terms of contract and parties' actual course of dealing, must be evaluated in determining whether defendant has purposefully established minimum contacts with forum). This is why we do not merely consider "whether certain of [the Napoli] appellants' contacts with Texas, standing alone, are sufficient to subject them to personal jurisdiction here" but instead, "whether there is a substantial connection between all of [the Napoli] appellants' Texas contacts considered collectively, and the operative facts of the litigation." *See Dodd v. Savino*, 426 S.W.3d 275, 286 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *P.V.F.*, 60 S.W.3d at 326).

In any event, the Napoli appellants argue that the test overwhelmingly favors them. We disagree.

*Solicitation, negotiation, consummation, and performance in Texas.* The Napoli appellants assert that this factor favors them because all but two depositions were ordered by their employees in other states than Texas and because the agreements were performed in other states by reporters in those states for litigation pending outside Texas.

Haines has been a Texas resident since April 2014, is an attorney apparently only licensed in Texas, manages Napoli Shkolnik PLLC's Texas office, and is the "Partner in charge of the firm's asbestos litigation group." The Napoli appellants, including Haines, were using Stratos for depositions and other work as early as February 2015. The Napoli appellants knew that the litigation-support service provider with which they were contracting was based in Texas. *See Parex Res., Inc. v. ERG Res., LLC*, 427 S.W.3d 407, 421–22 (Tex. App.—Houston [14th Dist.] 2014), *aff'd sub nom. Searcy v. Parex Res., Inc.*, 496 S.W.3d 58 (Tex. 2016). Haines

15

was personally named as the contact and addressee for the Napoli appellants on several invoices, including one addressed to "Patrick N. Haines, Napoli, Bern, Ripka, Shkolnik & Associates, LLP, 3001 Esperanza Crossing, Suite 1063, Austin, TX 78578." In addition, a Stratos account statement was addressed to "Accounts Payable, Napoli, Bern, Ripka, Shkolnik & Associates, LLP, 3001 Esperanza Crossing, Suite 1063, Austin, TX 78578."

In his declaration, asbestos-litigation partner-in-charge Haines stated that it was "[his] staff" located in California and Illinois who would have placed orders for depositions with Stratos.[4] In other words, the Stratos depositions were ordered pursuant to the direction of Haines, who according to his declaration, spends half his time working from Texas. In addition, the May 2015 text-message exchange between Haines and Chandler indicates that Haines was the Napoli appellants' point person with Chandler at Stratos regarding payment issues for its previous work done for the Napoli appellants and for future asbestos deposition business. Haines indicated that most asbestos depositions would be in California, Missouri, and Illinois but emphasized they were "long duration" and it was frequently up to Haines and the Napoli appellants to "pick" their reporter. After this exchange, the invoices and statements show that the Napoli appellants, including Haines, continued using Stratos for deposition services.

Later, in an October 2015 text-message exchange, Chandler asked Haines why "[his] people called to cancel a [California] depo that wasn't even set with us" and told Haines "[y]ou are cheating on me." Haines then complained to Chandler about the quality of the reporters Stratos was using and stated that another individual heading the Napoli appellants' "depo department" (Clay Carroll) was "agitating to

---

[4] Stratos's other account statements were addressed to the accounts-payable departments of the Napoli appellants in California and Illinois.

use" another company. Chandler disputed any quality issues because Stratos only uses "experienced asbestos ladies." Chandler also told Haines "[that other company] will not cut you the deal I have." Haines encouraged Chandler to talk to and meet Carroll, who was "in Dallas," and indicated Chandler could use Haines's name in negotiations. After this exchange, the invoices and statements show that the Napoli appellants, including Haines, continued using Stratos for deposition services through May 2016. The total number of "jobs" Stratos provided to the Napoli appellants from February 2015 to May 2016 was over 100.

Although the depositions physically occurred outside Texas, the record reasonably supports that Stratos was coordinating services from its Houston office, including scheduling and staffing depositions, *i.e.*, making sure to "put experienced asbestos" reporters on the Napoli appellants' "jobs." The text messages between Haines and Chandler indicate that Stratos's staffing decisions were not de minimus; improper staffing on the front end could result in "problems" and loss of additional jobs. Haines complained, and Chandler denied, that Stratos had caused such problems due to its staffing choices. These agreements were not solely and entirely performed outside Texas. Unlike the cases relied on by the Napoli appellants in their brief, a material portion of the parties' over-100 contracts was performed in Texas.

In sum, the evidence indicates that the agreements were solicited by a Texas attorney or staff acting under his direction and that a Texas attorney who spends half his time working in Texas was instrumental in negotiating and deciding to use Stratos's deposition services. The agreements were partially performed in Texas, where Stratos's staffing decisions were made. We conclude that this factor weighs in favor of Stratos.

*Continued communications directed to Texas in furtherance of the transactions.* The Napoli appellants do not dispute that all their requests for Stratos

to provide deposition and other services on their asbestos cases were directed to Stratos in Texas, even if those requests originated in another state. The evidence further indicates that certain of these communications were initiated by Texas attorney and resident Haines while he was working from his firm's office in Austin, and that the other orders for depositions were placed by "his staff"—employees of the Napoli appellants working under the direction of Haines, the partner in charge of the Napoli appellants' asbestos litigation. In addition, in multiple text messages, Haines communicated with Chandler regarding payment issues and whether and how Stratos would continue to be involved in the Napoli appellants' deposition work. Haines also encouraged Chandler to contact another individual with the Napoli appellants in Dallas to ensure that Stratos could continue to receive deposition work from them. The Napoli appellants acknowledge that their communications were related to the execution and performance of the agreements. Nevertheless, without further explanation or record citation, *see* Tex. R. App. P. 38.1(i), the Napoli appellants argue that this factor favors them. We disagree. The substance of these communications concerned not simply that the parties had an agreement, but also how Stratos should perform to retain the Napoli appellants as an ongoing customer. We conclude that this factor tends to weigh in favor of Stratos.

*Earning a profit in Texas from the transactions.* The Napoli appellants next argue that this factor favors them because they did not earn a profit in Texas related to the services at issue. They do not cite any record evidence or authority. *See* Tex. R. App. P. 38.1(i). Stratos did not address this factor below or on appeal. However, the record reflects that the Napoli appellants were not merely passive customers which did not "profit" in any way from their relationship in Texas with Stratos. *See P.V.F.*, 60 S.W.3d at 327. At the least, the Napoli appellants were benefitting through the "deal" Stratos "cut" them—*i.e.*, they saved costs by sourcing their

18

asbestos depositions from Stratos in Texas instead of from other litigation-support providers. We conclude that this factor slightly favors Stratos.

*Whether the nonresident paid the cost to ship the goods from Texas.* Without citing the record or authority, *see* Tex. R. App. P. 38.1(i), the Napoli appellants contend that this factor favors them because services were provided by court reporters in out-of-state locations where depositions were taken. Stratos did not address this factor below or on appeal. Several invoices reflect that Stratos, with an address in Houston, supplied bound copies of transcripts and digitized videos shipped as final litigation-service products to the Napoli appellants, including to Haines in Texas. However, the invoices do not expressly state the origin state of shipping. We conclude that this factor is neutral.

*Whether the nonresident placed follow-up orders.* The Napoli appellants concede that this factor favors Stratos.

*Whether Texas law governed the transactions.* The Napoli appellants argue that this factor favors them because it is doubtful Texas law would even apply to the two transactions ordered in Texas. Stratos argues that because the invoices were negotiated, contracted, and performance/payment was due in Texas, Texas law governs. However, here, there is no evidence any party specified either that Texas law or some law other than Texas law would apply. Where the agreements themselves are silent on choice of law, we conclude that this factor is neutral.

*Whether payments were sent or to be sent to Texas.* The Napoli appellants also concede that this factor favors Stratos.

In this particular case, based on the totality of factors in this test, the majority of which tend to favor Stratos, we conclude the trial court properly could have determined that the Napoli appellants purposefully availed themselves of the

privilege of conducting business within Texas. *See P.V.F.*, 60 S.W.3d at 325–26 (recognizing that cases in which a Texas seller sues an out-of-state buyer tend to hinge on "narrow factual distinctions"). In addition, we conclude that the trial court properly could have determined that all of Stratos's causes of action arose from or related to the Napoli appellants' purposeful contacts in connection with the over-100 jobs Stratos performed for them.

## D. Fair play and substantial justice

Although we have concluded the Napoli appellants had sufficient minimum contacts with Texas constituting purposeful availment of this forum, we also must consider whether exercising specific jurisdiction over the Napoli appellants would offend traditional notions of fair play and substantial justice. *See Int'l Shoe*, 326 U.S. at 316; *BMC Software*, 83 S.W.3d at 795.

The Napoli appellants bear the burden of presenting "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *See Burger King*, 471 U.S. at 477; *Guardian Royal*, 815 S.W.2d at 231. Despite this burden, they present no issue or argument on this point. *See* Tex. R. App. P. 38.1(f), (i). In any event, on this record, we conclude this is not one of those rare cases in which a Texas court's exercise over a nonresident defendant with sufficient minimum contacts would offend due process. *See Guardian Royal*, 815 S.W.2d at 231. First, there would be little to no burden on the Napoli appellants to adjudicate the dispute in Texas—a state in which they maintain a Texas office, have a partner who was the point of contact for the agreements at issue, and have successfully tried cases to verdict. Second, Texas has an interest in adjudicating claims by its entity citizens on their breached agreements. *See Dodd*, 426 S.W.3d at 287 ("The breach of these contracts plainly resulted in foreseeable harm to . . . a Texas resident."). Third, Stratos has an interest in being able to litigate this controversy on the over-100

jobs it performed for the Napoli appellants one time, in a single, convenient forum. Fourth, the interstate judicial system has an interest in the most efficient resolution of a dispute involving an interconnected series of contracts. Finally, the several states share an interest in furthering freedom of contract with access to efficient legal recourse. The Napoli appellants have not met their burden to show that exercising personal jurisdiction over them offends fair play and substantial justice. *See Burger King*, 471 U.S. at 477; *Guardian Royal*, 815 S.W.2d at 231.

We overrule the Napoli appellants' second issue.

Because we conclude that the trial court properly could exercise specific jurisdiction over the Napoli appellants and all of Stratos's claims arise from the same forum contacts, we do not reach the Napoli appellants' first and third issues. *See* Tex. R. App. P. 47.1; *Moncrief Oil*, 414 S.W.3d at 150–51; *Citrin Holdings, LLC v. Minnis*, 305 S.W.3d 269, 279 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("The court need not address general jurisdiction if it finds that a defendant is subject to specific jurisdiction.").

## III. CONCLUSION

Accordingly, we affirm the trial court's order denying the Napoli appellants' special appearance.


/s/     Charles A. Spain
        Justice


Panel consists of Justices Wise, Zimmerer, and Spain.